**UNITED STATES of America, Appellee,**

v.

**John STAYTON, a/k/a "John Gallagher", Defendant-Appellant.**

**No. 823, Docket 85–1341.**

United States Court of Appeals, Second Circuit.

Argued Feb. 20, 1986.

Decided May 20, 1986.

Harold J. Boreanaz, Buffalo, N.Y. (Boreanaz, Baker & Humann, of counsel), for defendant-appellant.

Matthew J. Murphy III, Asst. U.S. Atty. for the W.D. of N.Y., Buffalo, N.Y. (Salvatore R. Martoche, U.S. Atty. for the W.D. of N.Y., of counsel), for appellee.

Before OAKES, KEARSE, and PRATT, Circuit Judges.

GEORGE C. PRATT, Circuit Judge:

Appellant John Stayton was convicted on one count of unlawful importation of the Schedule-II controlled substance phenylacetone, a chemical used in the manufacture of methamphetamine. Voir dire of the jury took place twenty-three months before the jury was sworn and the court proceeded with opening statements and testimony. The United States District Court for the Western District of New York denied Stayton's motion, made on the eve of trial, to dismiss the indictment for violations of his rights under the Speedy Trial Act, 18 U.S.C. §§ 3161–3174, and the sixth amendment. Since the delay between voir dire and the rest of the trial derogated the spirit and intent of the Speedy Trial Act, we vacate the conviction and remand with an instruction that the indictment be dismissed with prejudice to reprosecution of Stayton. Because the indictment in this case must be dismissed on the basis of the Speedy Trial Act, we need not address Stayton's contention that the delay here also violated his sixth amendment right to a speedy trial, see Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972).

BACKGROUND

In June 1982 Canadian authorities were maintaining surveillance over four drums of phenylacetone, or "P2P", stored in a Toronto warehouse. Even though sale, possession, and use of P2P was not controlled in Canada, the officers watched the drums being transferred in a rented van and observed two men purchasing rubber hosing, hose clamps, a funnel, and other equipment. On June 15, 1982, two men, John Stayton and Carl Jackson, were stopped at the Peace Bridge in Buffalo as they attempted to enter the United States when customs officials, alerted by Canadian authorities, noticed liquid dripping from their van. Upon inspection, officials found two steel tanks welded underneath the van in which 200 kilograms of P2P had been secreted.

Stayton and Jackson were indicted on June 23, 1982, for unlawful possession and importation of phenylacetone and for related conspiracy charges, in violation of 21 U.S.C. §§ 841(a)(1), 952(a), 960(a)(1), and 846, and 18 U.S.C. § 2. After the district judge had excluded twenty days from the speedy trial calculus in the interest of justice, because of confusion caused by the filing and subsequent dismissal due to mistaken identity of a superseding indictment concerning a third coconspirator, voir dire of the jury was conducted on September 14, 1982, within the seventy day limit of the Speedy Trial Act. See 18 U.S.C. § 3161(c)(1). The jury was not, however, sworn at that time. In fact, the jury was not sworn, and the presentation of the case to the jury did not begin, until August 15, 1984, more than twenty-three months after the voir dire. Except for a short period after arrest while bail was being arranged, Stayton was not incarcerated during this time.

In the time between the voir dire and the rest of the trial, the district court addressed several pretrial motions. The most significant of these was made by Stayton's codefendant, Jackson, who moved to suppress certain identification testimony on September 8, 1982. The court heard oral argument on this motion on January 31, 1983, but did not decide it until May 31, 1984, over sixteen months later. During this extensive period, the assistant United States attorneys on the case sent seven reminder letters to the court and went so far as to make a motion for a decision on this and several other pending pretrial motions.

Alleging violations of their rights under both the Speedy Trial Act and the sixth amendment, Stayton and Jackson moved the day before trial, August 14, 1984, pursuant to Fed.R.Crim.P. 48(b), to dismiss the indictment against them. The district court reserved decision until the conclusion of the trial. During the trial the district court dismissed all counts against codefendant Jackson, and all but one against Stayton, intentionally and unlawfully importing phenylacetone into the United States, on which the jury returned a verdict of guilty on August 23, 1984. Eleven months later, by a memorandum and order dated July 26, 1985, the district court finally denied Stayton's motion to dismiss on speedy trial grounds as well as his post-trial motions for acquittal and for a new trial. The judge found no violation of the Speedy Trial Act because "the commencement of jury selection had satisfied the requirements * * * of the Act." This appeal followed.

## DISCUSSION

### A. *When Trial "Commences".*

Under the Speedy Trial Act:

In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall *commence* within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

18 U.S.C. § 3161(c)(1) (emphasis added). The post-voir dire delay at issue here presents the question of what must be done to satisfy the commencement requirement of the act. Several circuits have concluded that under this provision a jury trial commences at the voir dire. *See, e.g., United States v. Manfredi,* 722 F.2d 519, 524 (9th Cir.1983); *United States v. Howell,* 719 F.2d 1258, 1262 (5th Cir.1983), *cert. denied,* 467 U.S. 1228, 104 S.Ct. 2683, 81 L.Ed.2d 878 (1984); *United States v. Gonzalez,* 671

F.2d 441, 443 (11th Cir.), *cert. denied,* 456 U.S. 994, 102 S.Ct. 2279, 73 L.Ed.2d 1291 (1982). In addition, the Plan for Prompt Disposition of Criminal Cases in effect in the Western District of New York, which has been approved by the Second Circuit Judicial Council pursuant to 18 U.S.C. § 3165(c), provides that "[a] trial in a jury case shall be deemed to commence at the beginning of *voir dire.*" Western District of New York, *Plan for Prompt Disposition of Criminal Cases* § 4(e)(3). In this case, the district court relied on both *Gonzalez,* 671 F.2d at 443, and the western district plan in concluding that despite the twenty-three-month hiatus between voir dire and the rest of the trial, Stayton was not denied his statutory right to a speedy trial, because the voir dire did take place, and the trial therefore "commenced", within the seventy-day limit authorized by the act.

In *United States v. Fox,* 788 F.2d 905 (2d Cir.1986), another panel of this court recently addressed issues similar to those presented here based on a delay of five months between voir dire and the rest of the trial. There, we held that, although voir dire marks the technical commencement of the trial, the strictures of the Speedy Trial Act are not fully satisfied by mere technical commencement. In the absence of a request by either side, or of any apparent justification, for an adjournment of five months after the voir dire was completed, we could not accept the technical commencement of the trial, voir dire, as satisfying the requirements of the act. *Id.* at 909. We therefore ordered the indictment dismissed and remanded to require the district judge to give reasons for the delay and to determine whether the dismissal should be with or without prejudice. Inasmuch as we face a delay here of not just five, but twenty-three months, we find it necessary to expand upon the holding in *Fox* to provide further guidance on the subject of post-voir dire delays.

The Speedy Trial Act was designed to effectuate the interests of society in general and of the defendant in particular by

ensuring that our courts mete out speedy justice. *United States v. Didier*, 542 F.2d 1182, 1188 & n. 7 (2d Cir.1976). The prosecutor, defense counsel, and the court each plays a role in insuring that the interests of the public and the defendant in a speedy trial are protected. "The Act controls the conduct of the parties and the court itself during criminal pretrial proceedings. Not only must the court police the behavior of the prosecutor and the defense counsel, it must also police itself." *United States v. Pringle*, 751 F.2d 419, 429 (1st Cir.1984).

A reasonable post-voir dire delay does not offend this congressional purpose, but the reasonableness of a delay must be determined in the context of the Speedy Trial Act itself, which is premised on strict time limits tempered by certain exceptions designed to accommodate the vagaries of the trial process. Thus, if the number of days of delay between the voir dire and the actual presentation of the case to a sworn jury cannot be justified in light of the reasons for the delay, the act is violated.

In the typical case in which voir dire occurs within the seventy-day limit but the jury is sworn beyond that time period, the parties expect that the swearing of the jury and the presentation of the case will follow soon after voir dire. For instance, in *Howell* the fifth circuit perceived no violation of the act in the district court's decision to delay the start of Howell's trial until seven days after the voir dire to allow a civil trial to proceed first. 719 F.2d at 1262.

Similarly, in *Gonzalez* the voir dire was completed, and the jury was empanelled but not sworn, on the seventieth day following Gonzalez's indictment. Because the trial judge was to attend a judicial conference the following week, the parties and the court agreed to recess the trial until eleven days after the voir dire. *See* 671 F.2d at 442. Such a delay was found to be permissible because it did not violate the spirit of the act. *Id.* at 443–44. Still, the *Gonzalez* court

> caution[ed] that our decision not be viewed as a license to evade the Act's spirit by commencing voir dire within the

prescribed time limits and then taking a prolonged recess before the jury is sworn and testimony is begun. The district courts must adhere to both the letter *and the spirit* of the Act, and we will not hesitate to find that a trial has not actually "commenced" within the requisite time if we perceive an intent to merely pay the Act lip service.

*Id.* at 444 (emphasis added).

Here, the twenty-three months between voir dire and the swearing of the jury unreasonably prolonged the process. We recognize that the Western District of New York currently faces an overloaded docket, but "the court's crowded calendar [is not a] sufficient reason for delay", *Didier*, 542 F.2d at 1188, beyond what may be authorized by the Speedy Trial Act itself, *see, e.g.,* 18 U.S.C. § 3161(h). The sheer length of this delay in the context of a record that does not hint at a single justifying reason leads us to conclude that there can be no justification. A delay of the magnitude imposed on defendant here blatantly offends the purpose and spirit of the act; voir dire may not be used as a safe harbor for unreasonably postponing a federal criminal trial. *See Gonzalez*, 671 F.2d at 444.

The act does not, of course, leave the court helpless in the face of the many problems inherent in bringing all parties, counsel, jurors, witnesses, and the court together at the same time so that a criminal trial may proceed. For example, there are numerous provisions built into the act that automatically exclude certain commonplace delays encountered in a criminal trial. *See, e.g.,* 18 U.S.C. §§ 3161(h)(1)–3161(h)(7). In addition, on the motion of either party, or of the court *sua sponte*, the court may grant a continuance for anticipated periods of delay if it finds "that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." *Id.* § 3161(h)(8)(A). Any such continuance, however, may be granted only upon consideration of the factors listed in section 3161(h)(8)(B), and, as we have elsewhere noted, the district

judge must indicate not retrospectively, but at the time of granting an "ends-of-justice" continuance, that he is "doing so upon a balancing of the factors". *United States v. Tunnessen*, 763 F.2d 74, 78 (2d Cir.1985).

■ Apparently because he believed that conducting the voir dire was, by itself, enough to satisfy the statutory requirement for a speedy trial, the district judge did not consider the possible application of any of the time exclusions authorized by the act. There is no claim here, however, that those exclusions could conceivably cover the twenty-three month period. Nor was there any determination by the district judge that any of the post-voir dire delay in this case should have been excluded to serve the "ends of justice". On the contrary, the district judge was operating under a belief, which we hold here, as did the panel in *United States v. Fox*, to have been erroneous, that the Speedy Trial Act had been satisfied once the voir dire was conducted within seventy days. Ends of justice continuances cannot be used in hindsight to mop up such excessive delay, as "Congress intended that the decision to grant an ends-of-justice continuance be prospective, not retroactive". *Tunnessen*, 763 F.2d at 77.

### B. *Dismissal With or Without Prejudice.*

Having concluded that Stayton was not brought to trial within the time limits of section 3161(c)(1), we next must determine "whether to dismiss the case with or without prejudice". 18 U.S.C. § 3162(a)(2). Because the district court denied Stayton's motion to dismiss, it naturally did not address whether a dismissal should be with or without prejudice. Nevertheless, we need not remand this question to the district court since "a remand for a hearing should not be routinely ordered in a case like this where the issue of whether dismissal should be with or without prejudice arises for the first time on appeal, the trial court having denied the motion to dismiss." *Tunnessen*, 763 F.2d at 79. Our conclusion is that the dismissal should be with prejudice to the reprosecution of Stayton.

We have previously rejected the notion that the act contains a presumption in favor of dismissal with prejudice, holding that the decision lies within the discretion of the court, *see United States v. Caparella*, 716 F.2d 976, 979–80 (2d Cir.1983), guided by four factors: (1) the seriousness of the offense; (2) the facts and circumstances which led to the dismissal; (3) the impact of a reprosecution on the administration of the Speedy Trial Act; and (4) the impact of a reprosecution on the administration of justice, 18 U.S.C. § 3162(a)(2).

As to the first factor, the crime here—trafficking in 200 kilograms of a controlled substance—is a serious one, *see United States v. Simmons*, 786 F.2d 479, 485 (2d Cir.1986); to be weighed against it is the seriousness of the delay, *see United States v. Russo*, 741 F.2d 1264, 1267 (11th Cir. 1984), because, "[w]here the crime charged is serious, the sanction of dismissal with prejudice should ordinarily be imposed only for serious delay", *Simmons*, 786 F.2d at 485.

■ The dominating consideration here on the seriousness of the delay is the sheer length of the period involved. As noted earlier, there is no suggestion that any significant portion of the twenty-three months under consideration would be excludable under the act. Unlike many recent cases, the district court was not barraged with pretrial motions by multiple defendants; rather, only a limited number of such motions were made. Moreover, the court ignored the persistent prodding of the government to decide the outstanding motions and proceed to trial.

Stayton alleges that he was prejudiced over the twenty-three months following voir dire by the loss of a critical witness, an unindicted coconspirator—an allegation the government strongly disputes. Stayton also claims that six of the jurors had to be replaced because of the long delay, and this, he argues, upset the composition of the jury he originally had selected.

Although prejudice to the defendant is a proper consideration in deciding whether to

dismiss with or without prejudice, *see Simmons*, 786 F.2d at 486; *Caparella*, 716 F.2d at 980, we need not decide whether, and if so, how seriously, these changes prejudiced Stayton. In the context of this case, the enormity of the delay is sufficient alone to tip this second factor in favor of dismissal of the indictment with prejudice.

The third and fourth factors blend together in these circumstances, since neither the Speedy Trial Act nor the administration of justice in general would be advanced by excusing the type of administrative neglect that occurred here. As we noted in *Caparella*, "[a]s a deterrent to other would-be offenders, [the dismissal of this prosecution] seems relatively insignificant. Of greater significance to the administration of justice is the salutary effect of this Court's reaffirmance of Congress' basic purpose in enacting the Speedy Trial Act." 716 F.2d at 981.

## CONCLUSION

The judgment appealed from is reversed, the conviction vacated, and the case remanded to the district court with instructions to dismiss the indictment with prejudice for failure to commence the trial within the period required by the Speedy Trial Act.