UNITED STATES of America,
Appellant,

v.

Louis GIAMBRONE,
Defendant–Appellee.

No. 295, Docket 90–1317.

United States Court of Appeals,
Second Circuit.

Argued Nov. 8, 1990.

Decided Dec. 4, 1990.

Patty Merkamp Stemler, Atty., Dept. of Justice, Washington, D.C. (Dennis C. Vacco, U.S. Atty., W.D.N.Y., Michael A. Battle, Asst. U.S. Atty., Buffalo, N.Y., on the brief), for appellant.

John Patrick Pieri, Buffalo, N.Y. (Condon & Pieri, P.C., on the brief), for defendant–appellee.

Before KAUFMAN, KEARSE and McLAUGHLIN, Circuit Judges.

KEARSE, Circuit Judge:

The United States appeals from a final judgment of the United States District Court for the Western District of New York, Richard J. Arcara, *Judge*, dismissing with prejudice the indictment against defendant Louis Giambrone because of the government's failure to comply with the Speedy Trial Act ("Act"), 18 U.S.C. § 3161 *et seq.* (1988). On appeal, the government contends that the dismissal should have been without prejudice. We conclude that the dismissal with prejudice was within the discretion of the district court, and we affirm the judgment.

## I. BACKGROUND

The indictment at issue on this appeal, which charges Giambrone with distributing and conspiring to distribute eight ounces of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846 (1988), is the second such indictment. Both indictments were based on the sale of that cocaine by one victor Adragna to an undercover agent, leading to the arrest of Adragna; after his arrest, Adragna agreed to cooperate with the government, and he identified Giambrone as the source of the cocaine.

The Speedy Trial Act requires that an indicted defendant be brought to trial within 70 days after the filing of the indictment or the defendant's appearance, whichever is later. 18 U.S.C. § 3161(c)(1). The present action was dismissed by Judge Arcara for noncompliance with this provision.

The course of the pertinent proceedings under the two indictments is set forth below.

## A. *The First Indictment*

Giambrone was arrested on September 9, 1988; the first indictment was returned on September 14, 1988. After various pretrial proceedings, a conference was held before Judge John T. Curtin on October 4. At this conference, the government stated that it was ready to go to trial. Trial was scheduled to commence during the week of December 12, 1988; jury selection was scheduled for November 28.

Jury selection proceeded as scheduled, but the trial did not. On December 9, the government moved for an adjournment of the trial or, alternatively, for a dismissal of the case without prejudice. In support of its motion, the government stated (a) that Adragna would be an essential witness, (b) that when it had stated it was ready for trial it had expected Adragna to testify, and (c) that Adragna had more recently taken the position that he was unwilling to testify for fear of reprisal and because, in light of the pending charges against him, he would assert his Fifth Amendment privilege against self-incrimination. Neither Adragna's unavailability nor his status as an essential witness had previously been mentioned; the government's November 28, 1988 list of trial witnesses had not included Adragna.

The government sought an adjournment until the charges against Adragna could be resolved, in order to eliminate his Fifth Amendment concerns. In a ruling on December 13, 1988, the court apparently granted the government's motion to adjourn the trial, putting it off "until after January 1, 1989."

No further action was taken until February 2, 1989. On that date, Judge Curtin received a letter from the government stating that Adragna was unavailable due to a medical condition, that his attorney was also unavailable, and that it was uncertain when a trial date could be set for Adragna. A conference before Judge Curtin was then scheduled for February 24, 1989, but was adjourned until March. At a March 8 conference, the court scheduled another conference for March 17 and set March 21 as the new trial date.

At some point, apparently, it was determined that the government's December 9, 1988 motion for an adjournment or dismissal was still pending, and on March 9, 1989, Giambrone filed a supplemental affidavit urging (a) that the motion for a continuance be denied, and (b) that if the motion to dismiss the indictment was to be granted, the dismissal be with prejudice. On March 20, the government filed an affidavit and a memorandum of law urging the court to dismiss the case without prejudice. On that date, Judge Curtin also heard testimony from Adragna, who by this time had pleaded guilty and was scheduled to be sentenced on April 24. Adragna informed the court that he would exercise his Fifth Amendment privilege and refuse to testify against Giambrone. Accepting this claim of privilege, Judge Curtin ruled that Adragna would be unavailable to the government as a witness until after he was sentenced.

In an order dated March 27, 1989, Judge Curtin granted the government's motion to dismiss, finding that Adragna was an essential witness in the government's case against Giambrone and that it would be inappropriate to delay Giambrone's trial until after the April 24 sentencing of Adragna. Further finding that Giambrone's counsel had indicated that the delay of trial had not resulted in Giambrone's loss of witnesses or other evidence in support of his defense, Judge Curtin granted the dismissal without prejudice.

## B. *The Present Prosecution*

The present indictment against Giambrone was returned on July 26, 1989, and the new case was assigned to Judge Arcara. By order of a United States Magistrate, the time from Giambrone's July 28 arraignment until August 7, 1989, was excluded from Speedy Trial Act consideration in order to allow the defense to conduct discovery. The government apparently did not mention to the magistrate that it had

any Speedy Trial Act concerns. The case was thus routinely placed on Judge Arcara's calendar for a status conference on September 1.

The conference before Judge Arcara took place as scheduled. At that conference, the government did not inform the court that there were any speedy trial concerns. Nor did it mention that this was the second prosecution of Giambrone on these charges. A schedule was set for defense motions.

On September 14, 1989, Giambrone's attorney, who had only recently become aware that the Speedy Trial Act time lapse from the first prosecution would carry over to the second, moved for dismissal of the indictment on speedy trial grounds, among others. Noting that the defense had at all times been ready for trial and had opposed the government's requests for delay, and noting further that the government had eventually taken the position in the first prosecution that Adragna was an essential witness and that Adragna was still not available (apparently Adragna, though granted immunity, had refused to testify against Giambrone in the grand jury proceeding leading to the second indictment), Giambrone urged that the dismissal be with prejudice.

In an affidavit dated September 29, 1989, the government opposed the motion, "totally disput[ing]" that the Speedy Trial Act's 70–day period had run and contending that if a dismissal were ordered it should be without prejudice. The government conceded that 66 days had run during the first prosecution but contended that none of the four remaining allowable days had run in the more than two months since the reindictment. It argued that the time between August 7 and September 1, 1989, was excludable because the government was waiting for Judge Arcara to hold a conference and because Giambrone's attorney said he was considering making pretrial motions. The government conceded that no order excluding that period for Speedy Trial Act purposes had been obtained.

## C. The Decision Below

In a Decision and Order dated April 10, 1990 ("Decision"), Judge Arcara granted Giambrone's motion to dismiss. The court found that (a) by December 12, 1988, 66 days had been used in the first prosecution, and (b) in the present prosecution the 24–day period from August 7 to September 1, 1989, was not excludable. The court noted that even had the government's opposition to Giambrone's motion to dismiss presented a persuasive excuse for its inaction during that period, which it did not, the Act does not permit a time period to be excluded retroactively, *see, e.g., United States v. Tunnessen,* 763 F.2d 74, 77 (2d Cir.1985). Since a total of 90 nonexcludable days had elapsed, the court found that Giambrone was entitled to have the indictment dismissed.

As quoted below and discussed in greater detail in Part II.B., the court concluded that the dismissal of the present indictment should be with prejudice. After noting that the factors to be considered in determining whether to dismiss a case with or without prejudice include " 'the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of [the Speedy Trial Act] and on the administration of justice,' " Decision at 12 (quoting *United States v. Taylor,* 487 U.S. 326, 333, 108 S.Ct. 2413, 2417, 101 L.Ed.2d 297 (1988)), the court stated as follows:

> The Assistant United States Attorney argues that the statute, by providing for dismissal with or without prejudice, allows the Court to exercise its discretion and grant the government's motion to dismiss without prejudice. But that argument is inappropriate after a review of this case when it is clear that any subsequent indictment would also necessitate dismissal under this statute.
>
> There is no doubt that the defendant is charged with a serious offense. Any charge related to drug transactions must be considered serious today. But, the other two factors concerning the administration of this chapter and of justice

demands [*sic*] that the dismissal be with prejudice.

.... Mr. Giambrone[] ... has been under indictment for over one year without being afforded his day in Court.

While this is the only prejudice defense counsel argues has occurred, it is undisputed that the defense was consistently ready for trial all during the period the government disregarded its responsibility under the Speedy Trial Act. Because of that neglect, even though unintentional, the drastic step of dismissing the indictment must be taken.

The cavalier attitude of the United States Attorney's Office in observing the dictates of the Speedy Trial Act has been noted before. *United States v. Kiszewski* [877 F.2d 210, 215 (2d Cir.1989)]. The responsibilities imposed on the government's attorneys is both vital and may be pivotal. It is time that those responsibilities and the dictates of the Speedy Trial Act were given the significance they deserve.

Decision at 12–13.

Accordingly, the indictment was dismissed with prejudice, and this appeal followed.

## II. DISCUSSION

On appeal, the government contends that the order that the dismissal be with prejudice should be reversed on the grounds that (1) the district court erroneously thought it could not dismiss without prejudice because it believed the exhaustion of the 70–day period would "necessitate dismissal" of "any subsequent indictment," and (2) even if the court is found to have dismissed with prejudice as an exercise of its discretion, that discretion was abused. We agree that the court had discretion to dismiss with or without prejudice, but we conclude that the dismissal with prejudice was not an abuse of discretion.

A. *The Permissibility of Reprosecution*

To the extent pertinent here, the Speedy Trial Act provides that the trial of an indicted defendant is to commence within 70 days from the date of filing of the indictment. 18 U.S.C. § 3161(c)(1). The Act provides that various periods of time may be excluded from the 70–day calculation. *See id.* § 3161(h). Section 3162(a)(2) provides that a defendant not brought to trial within the time allowed by § 3161(c) is entitled to have the indictment dismissed. The court may dismiss with prejudice or without. 18 U.S.C. § 3162(a)(2).

A dismissal "without prejudice" means, in principle, that a second suit on the same ground is permissible. *See, e.g., Santos v. State Farm Fire & Casualty Co.*, 902 F.2d 1092, 1094–95 (2d Cir.1990). Where an indictment has been dismissed on motion of the government, however, any unexcluded speedy trial time from the dismissed prosecution is carried over to a reprosecution. *See United States v. Rodriguez–Restrepo*, 680 F.2d 920, 921 (2d Cir.1982); *United States v. Arkus*, 675 F.2d 245, 247 (9th Cir.1982); *United States v. Dennis*, 625 F.2d 782, 793 (8th Cir.1980). This carry-over "protects against governmental circumvention of the speedy-trial guarantee." *United States v. Rojas–Contreras*, 474 U.S. 231, 239, 106 S.Ct. 555, 560, 88 L.Ed.2d 537 (1985) (Blackmun, *J.*, concurring).

On the other hand, when the indictment is dismissed on motion of the defendant and there is a reprosecution, the 70–day period provided by § 3161(c) begins anew. Thus, § 3161(d)(1) provides, in pertinent part, as follows:

If any indictment or information is dismissed upon motion of the defendant, ... and thereafter ... an information or indictment is filed charging such defendant with the same offense ..., the provisions of subsections (b) and (c) of this section shall be applicable with respect to such subsequent ... indictment, or information, as the case may be.

*See United States v. Rojas–Contreras*, 474 U.S. at 239–40, 106 S.Ct. at 559–60 (Blackmun, *J.*, concurring); *cf. United States v. Samples*, 713 F.2d 298, 302–03 (7th Cir. 1983) (after defendant's successful motion to dismiss prosecution, government has new 30–day period after rearrest in which to indict, *see* 18 U.S.C. § 3161(b)); *United*

*States v. Thomas,* 705 F.2d 709, 710–11 (4th Cir.1983) (same).

▪ In the present case, in light of the Act's provision that the 70–day period begins to run anew when there is a reprosecution following a dismissal at the behest of the defendant, Judge Arcara erred in suggesting that a dismissal without prejudice would be a nullity. Since in the present case, unlike the initial prosecution, the dismissal was on the motion of Giambrone, if the dismissal here were without prejudice the government could indict Giambrone a third time, and following that new indictment it would have 70 days to bring him to trial. Accordingly, the matter of whether to dismiss with or without prejudice was a matter left to the district court's discretion.

In many cases where the district court has erroneously concluded that it did not have discretion to rule in a certain way, we remand for the court to determine how to exercise its discretion. As we read the Decision in the present matter, however, the court sought to indicate how it would exercise its discretion if the question was not mooted by the expiration of all permitted time. Thus, it proceeded to consider all of the factors that must inform the court's exercise of discretion, *see United States v. Taylor,* 487 U.S. at 333, 108 S.Ct. at 2417, and determined that two of the three factors "demand[ed]" that the dismissal be with prejudice. In light of the Decision as a whole, therefore, we conclude that the court first determined that the dismissal must be with prejudice because it had no meaningful discretion with regard to the with-or-without prejudice issue, and that it then determined that if it had discretion, the pertinent factors would require it to dismiss with prejudice.

Since the district court has already taken pains to consider all of the appropriate factors and to inform us how it would rule if it has discretion, we need not remand but may proceed to the question of whether the dismissal with prejudice was an abuse of discretion.

**B.** *The Decision To Dismiss With Prejudice*

The Speedy Trial Act does not indicate a preference as between dismissals with and dismissals without prejudice. *See generally United States v. Taylor,* 487 U.S. at 334–35, 108 S.Ct. at 2418–19. The Act does, however, set out factors to be considered by the court in choosing between the two:

> In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice.

18 U.S.C. § 3162(a)(2). Accordingly, the court's exercise of its discretion in selecting a dismissal with prejudice or a dismissal without prejudice must be reviewed with reference to the court's consideration of these factors. *United States v. Taylor,* 487 U.S. at 336–37, 108 S.Ct. at 2419–20. To permit appropriate appellate review, the district court should explicate as clearly as possible the bases for its conclusions as to each factor. *See id.*

▪ With respect to the circumstances leading to the dismissal and the impact of a reprosecution on the administration of the Speedy Trial Act and on the administration of justice, the court may properly take into account a demonstrably lackadaisical attitude on the part of the government attorney in charge of the case or a pattern of dilatory practices on the part of the United States Attorney's office in the district in question. *See id.* at 338–39, 108 S.Ct. at 2420–21. A pattern of disregard for the responsibility to bring criminal cases to trial expeditiously has the potential for nullifying the requirements of the Act, for if the government suffers only dismissals without prejudice on motion of the defendant, it in effect gains successive 70–day periods in which to bring the defendant to trial. "The longer the delay, the greater the presumptive or actual prejudice to the defendant, in terms of his ability to prepare for trial or the restrictions on his liberty," for " ' "whether he is free on bail or not,

... [the delay] may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends."'" *United States v. Taylor,* 487 U.S. at 340, 108 S.Ct. at 2421 (quoting *Barker v. Wingo,* 407 U.S. 514, 537, 92 S.Ct. 2182, 2195, 33 L.Ed.2d 101 (1972) (White, *J.,* concurring) (quoting *United States v. Marion,* 404 U.S. 307, 320, 92 S.Ct. 455, 463, 30 L.Ed.2d 468 (1971))).

A pattern of disregard for speedy trial rights is also detrimental to the administration of the criminal justice system since delays risk the loss of important evidence, and repetitive prosecutions on the same charges cause wasteful replication of effort. Such delays also harm both the interest of the defendant and the interest of the public, for if the defendant is innocent, he has an interest in early vindication; and if he is guilty, the public has an interest in expeditious punishment for a variety of reasons, including the fact that the closer in time the punishment is to the crime, the greater its rehabilitative effect.

In reviewing a district court's choice between dismissing with and dismissing without prejudice, we have noted that the district court "is in a better position than we are to know whether the prosecutors need to be sent 'a strong message,'" *United States v. Kiszewski,* 877 F.2d at 215 (quoting *United States v. Taylor,* 487 U.S. at 343, 108 S.Ct. at 2422), and we have observed that our proper "inquiry is not whether we agree with [the district judge's] assessment of each factor but only whether he abused his discretion," *United States v. Kiszewski,* 877 F.2d at 214. We have, in various cases, concluded that there was no abuse of discretion in the court's order that the dismissal be without prejudice. *See, e.g., id.; United States v. Anderson,* 902 F.2d 1105, 1110–11 (2d Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 182, 112 L.Ed.2d 146 (1990). We have also on occasion reversed for abuse of discretion the ruling that a dismissal should be with prejudice, *see United States v. Wells,* 893 F.2d 535, 538–40 (2d Cir.1990); *see also United States v. Hernandez,* 863 F.2d 239

(2d Cir.1988), and in at least one case we have ruled that it was an abuse of discretion to dismiss without prejudice rather than with prejudice, *see United States v. Caparella,* 716 F.2d 976, 980–82 (2d Cir. 1983).

In the present case, Judge Arcara explicitly evaluated the factors he was required to consider, and we conclude that his decision to dismiss with prejudice was not an abuse of discretion. He began by noting that the offenses charged, dealing in and conspiring to deal in narcotics, were serious. Plainly this factor did not suggest a dismissal with prejudice. He found, however, that the other two factors outweighed this one and demanded dismissal. The latter factors, *i.e.,* the circumstances leading to the dismissal, and the impact of a reprosecution on the administration of the Act and on the administration of justice, were well explicated in Judge Arcara's Decision.

To begin with, he found the government's speedy trial attitude in the first prosecution "extremely lax." Decision at 7. He pointed first to the long lapse of time between October 4, 1988 and early December; in that more than two-month period apparently nothing happened, and the government made no effort to have that time excluded on any basis permissible under the Act. Further, Judge Arcara found it troublesome that when the trial date was less than a week away, the government sought an adjournment on the ground that Adragna was an essential witness; yet the government had never before mentioned Adragna as an essential witness. Indeed, it had not even included his name in its list of planned trial witnesses. Judge Arcara found the delay between December 9, 1988, and March 20, 1989, though that period was not categorized as nonexcludable time, equally troublesome. Judge Curtin had approved a postponement of the trial until after January 1; the government did not contact the court again until February 2. Thus an additional inexplicable month elapsed without any evident concern on the part of the government for its speedy trial responsibilities. After February 2, yet another month elapsed before there was even a conference to determine what course the proceedings should take.

Judge Arcara found that the government displayed no greater regard for its speedy trial responsibilities in the present prosecution. Given the fact that only four days remained on the Speedy Trial Act clock, one might have anticipated that the government would have informed the magistrate or the court of the need for expedited scheduling. Instead, without mentioning that need, the government allowed the first court conference to be scheduled for more than three weeks later. At the eventual conference, the government again made no mention of any speedy trial considerations; nor did it inform Judge Arcara, who had not been the judge to which the first Giambrone prosecution was assigned, that there had been a prior indictment. Further, in a periodic report filed by the United States Attorney's office with the court, the government stated that the speedy trial clock had 66 days left to run. While this doubtless was not an intentional misrepresentation, it was a further reflection of the government's lack of care and surely could not convey to the court the fact that there was need for an expedited trial.

The court noted that while these delays perhaps did not prejudice Giambrone in terms of a loss of evidence, Giambrone had at all times indicated his own readiness for trial and had opposed the government's requests for delays. Though technically the Act's 70-day period may have been exceeded by only 20 days, other periods of delay were inexplicable and the sum of the delays, by the time of Judge Arcara's decision, had left Giambrone in the disadvantageous position of an indicted but untried defendant for more than a year.

Finally, Judge Arcara found that, as this Court had observed in *United States v. Kiszewski,* a cavalier attitude toward speedy trial rights was characteristic of the United States Attorney's Office in the Western District of New York. In *Kiszewski,* we had found it "disquieting that so many of our recent Speedy Trial Act opinions are in cases coming from the Western District," and noted that there was "a strong suggestion of a pattern of neglect." 877 F.2d at 215. We are aware of several published opinions in which this Court has

been confronted with speedy trial violations by the United States Attorney's office in the Western District, *see, e.g., United States v. Kiszewski,* 877 F.2d at 215 (Speedy Trial Act violation); *United States v. Fox,* 788 F.2d 905 (2d Cir.1986) (Speedy Trial Act violation); *United States v. Tunnessen,* 763 F.2d at 78–79 (Speedy Trial Act violation); *United States v. New Buffalo Amusement Corp.,* 600 F.2d 368 (2d Cir. 1979) (Sixth Amendment violation); *United States v. Carini,* 562 F.2d 144 (2d Cir.1977) (Sixth Amendment violation); *United States v. Vispi,* 545 F.2d 328, 334 (2d Cir. 1976) (Sixth Amendment violation), and several opinions of the district court where such violations have been found, *see, e.g., United States v. Mikulec Industries, Inc.,* 1989 WL 56240 (W.D.N.Y.1989); *United States v. Reingold,* 384 F.Supp. 464 (W.D. N.Y.1974); *United States v. Lombardo,* 378 F.Supp. 727 (W.D.N.Y.1974); *United States v. Daneals,* 370 F.Supp. 1289, 1298– 1300 (W.D.N.Y.1974). There are additional cases, unreported, in which the district court has ordered a Speedy Trial Act dismissal without prejudice where, on appeal in the reprosecution, we have affirmed without published opinion.

We are persuaded that the district court's view that there is a pattern of speedy trial neglect in the Western District was justified, and we conclude that, given the facts of the present case, the determination that the administration of both the Act and the criminal justice system will best be served by a dismissal with prejudice was not an abuse of discretion.

### CONCLUSION

We have considered all of the government's challenges to the district court's exercise of its discretion to dismiss the present prosecution with prejudice, and we have found them to be without merit. The judgment of the district court is affirmed.