**UNITED STATES,**

v.

**John MONTECALVO, Defendant.**

**No. 05–CR–924 (ADS).**

United States District Court,
E.D. New York.

May 21, 2012.

Loretta E. Lynch, United States Attorney for the Eastern District of New York, by James Miskiewicz, Assistant U.S. Attorney, Central Islip, NY.

Schiff Hardin LLP, by Patricia A. Pileggi, Esq., of Counsel, New York, NY, for Defendant.

### MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

Presently before the Court is a motion by the Defendant, John Montecalvo, to dismiss the indictment and all charges against him, with prejudice, for violation of the Speedy Trial Act. Montecalvo's

charges arise from a bid-rigging scheme to artificially inflate prices and manipulate the awarding of publicly-funded contracts to repair and resurface roads in Suffolk County. For the reasons set forth below, the Defendant's motion is granted.

## I. BACKGROUND

### A. *Factual Background*

Montecalvo is associated with Montecalvo Asphalt Paving Corporation, which lays down asphalt that is manufactured by another company, John T. Montecalvo, Inc. Between July 2003 and September 2005, a group of individuals attempted to gain control of bidding on publicly-funded road repaving projects on Long Island. Montecalvo is alleged to have engaged in collusive conduct with these individuals, with the goal of rigging two separate projects: (1) a contract for the Suffolk County Department of Public Works ("SCDPW") ("the Suffolk County Contract"); and (2) a contract for the Town of Brookhaven's Division of Purchasing ("the Brookhaven Contract").

With regard to the Suffolk County Contract, the goal of the conspiracy was to obtain the paving work for William Fehr, Jr. and William Fehr, Sr. The Fehrs allegedly convinced other paving contractors, such as Montecalvo, to either refrain from bidding or to put in higher bids for the work. In exchange, the Fehrs promised to help Montecalvo and another paver, James Haney, to obtain work on the alternative project, the Brookhaven Contract. However, this plan ultimately failed, as the Fehrs were not awarded work on the Suffolk Contract. Instead, William Lyons, an eventual cooperating witness with the Government and his partner, Robert Garone, were awarded the contract.

With regard to the Brookhaven Road Repair Contract, Montecalvo and Haney allegedly agreed with the Fehrs that Montecalvo and Haney would share portions of the road contract as part of the conspiracy. On July 15, 2005, this plan proved to be successful as Montecalvo and Haney were awarded portions of the Brookhaven Contract. However, the contract was rebid on September 27, 2005, and thus the contract was ultimately awarded to the Fehrs' company.

There is some dispute as to Montecalvo's involvement and culpability in connection with the collusion surrounding the two contracts. The Defendant stresses that he was a reluctant participant in the whole scheme and that his involvement was merely a reaction to threatening behavior by the Fehrs. (*See* Def. Mem. at 4 ("In order to pressure Mr. Montecalvo to participate in these illegal discussions, the Fehrs told Mr. Montecalvo that they could withstand any price war, and that they could drive him out of business through predatory pricing.").) According to the Government, a recorded conversation reveals that Montecalvo was an active and willing member of the cartel as far back as 2004 and that the evidence indicates that Montecalvo intended to conspire with the other co-defendants. However, as will be set forth in more detail below in connection with the relevant legal standard, the strength of the Government's case and the Defendant's ultimate culpability is not relevant for the purposes of the present motion.

Montecalvo was arrested on November 23, 2005. Prior to his indictment, Montecalvo met with the Assistant United States Attorney ("AUSA") assigned to the case and provided a complete and arguably remorseful account of his involvement in the collusive conduct. On December 16, 2005, Montecalvo was indicted along with nine other individual and corporate defendants for two counts of mail fraud conspiracy, in violation of 18 U.S.C. § 1341. Montecalvo was charged with conspiring with each of

the co-defendants to defraud the SCDPW and Brookhaven in a scheme to rig the bidding process for publicly-funded construction projects that were meant to be competitively awarded.

Throughout 2006, Nicholas Kaizer, Esq., Montecalvo's attorney at the time, engaged in plea negotiations with the assigned AUSA. In or about May 2006, an initial cooperation agreement was drafted and forwarded to Kaizer, along with a financial disclosure affidavit. The Government claims that it was assured by defense counsel that Montecalvo was prepared to enter a guilty plea upon completion of the financial disclosure affidavit. On May 16, 2006, Kaizer emailed the AUSA and wrote: "John Montecalvo informs me that although he is working on the financial affidavit, it will take him two weeks to assemble the required documentation to faithfully be completed." However, according to the Government, Montecalvo also began to seek supervisory approval from the Government for a deferred prosecution agreement rather than a guilty plea, because a felony conviction would affect his ability to maintain corporate sponsorship for his car racing business. The Government claims that Kaizer informed them that only if the deferred prosecution option was rejected, would Montecalvo be willing to go forward and enter a guilty plea. Time was excluded under the Speedy Trial Act through December 18, 2006.

Ultimately, the Government did not agree to a deferred prosecution. In December 2006, the AUSA again sent a proposed cooperation agreement to Montecalvo's attorney, in response to which he suggested modifications. The AUSA then responded by e-mail that she needed to have the changes reviewed by the other AUSAs, who would then contact defense counsel.

According to Montecalvo, he never received any further response from the Government and that in the ensuing four years, there was no further contact between the U.S. Attorney's Office and counsel for the Defendant. The Government, on the other hand, claims that there were sporadic communications between the U.S. Attorney's Office and defense counsel, but that these oral conversations all took place over the phone and for that reason cannot demonstrate any evidence of these exchanges. Thus, although there is a factual dispute as to whether any oral discussions took place during this approximate four year period, there certainly is, as defense counsel described at oral argument, a seeming four year "black hole" during which the case did not progress.

By late 2009, Montecalvo had retained his current counsel, Patricia A Pileggi, Esq. of Schiff Hardin LLP. On December 10, 2010, the Defendant's counsel contacted the Government to request its consent to a dismissal of the indictment with prejudice. Over the course of 2011, written exchanges and meetings took place in pursuit of that goal. The Government remained willing to extend a cooperation agreement to the Defendant. However, on January 18, 2012, the Government informed the Defendant's counsel that it would not consent to a dismissal with prejudice.

### B. *Procedural History*

On March 26, 2012, the Defendant filed the present motion to dismiss the indictment with prejudice. On April 26, 2012, the government filed its opposition. On May 4, 2012, the Defendant filed a reply. Oral argument was heard on May 18, 2012.

## II. DISCUSSION

### A. *The Speedy Trial Act*

█ The Defendant moves to dismiss the indictment against him, with prejudice,

for violation of the Speedy Trial Act. The Government argues that if the indictment is dismissed, it should be dismissed without prejudice because, among other things, the charged crime is serious, the Defendant was not prejudiced, and the delay was inadvertent and not done in bad faith.

Under the Speedy Trial Act, 18 U.S.C. § 3161(c)(1), "the trial of a criminal defendant must generally commence within 70 non-excludable days, see 18 U.S.C. § 3161(h), of the filing of the information or indictment or of the defendant's first appearance before a judicial officer, whichever occurs last." *United States v. Vanhoesen*, 366 Fed.Appx. 264, 267 (2d Cir. 2010). "If a defendant is not brought to trial within the time limit required by section 3161(c) as extended by section 3161(h), the information or indictment shall be dismissed on motion of the defendant." 18 U.S.C. § 3162(a)(2). The "[d]efendant bears the burden of proof supporting such a motion." *United States v. Adams*, 448 F.3d 492, 503 (2d Cir.2006). Here, the Government concedes that more than six years have passed since the return of the indictment against Montecalvo on December 16, 2005, only one year of which was excluded.

Therefore, since the trial did not commence within the 70 non-excludable days as set forth in the Speedy Trial Act, dismissal of the indictment is warranted. However, the Court must decide whether such dismissal should be with or without prejudice. The determination of whether to dismiss an indictment with or without prejudice is committed to the sound discretion of the district court. *See United States v. Giambrone*, 920 F.2d 176, 180 (2d Cir. 1990).

The Speedy Trial Act states that "[i]n determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice." 18 U.S.C. § 3162(a)(1). The Supreme Court has further directed courts to consider the prejudice suffered by the defendant as a result of the delay. *See United States v. Taylor*, 487 U.S. 326, 334, 108 S.Ct. 2413, 101 L.Ed.2d 297 (1988) ("[T]here is little doubt that Congress intended this factor to be relevant for a district court's consideration."); *accord United States v. Wilson*, 11 F.3d 346, 352 (2d Cir.1993); *United States v. Kiszewski*, 877 F.2d 210, 213 (2d Cir.1989); *see also United States v. Upton*, 921 F.Supp. 100, 105 (E.D.N.Y.1995) ("The third factor—the impact of a reprosecution on the administration of the Speedy Trial Act and on the administration of justice, must, of necessity, also embrace the unexpressed factor of prejudice to the defendant."). The Court will analyze each factor in turn.

## B. *As to the Seriousness of the Offense*

It is well-settled that "[w]hen an indictment charges a serious offense, a court is more likely to rule in favor of a dismissal without prejudice." *United States v. Zedner*, 96 Cr. 285, 2006 WL 3050888, at *3, 2006 U.S. Dist. LEXIS 94971, at *7 (E.D.N.Y. Oct. 13, 2006) (citing *Kiszewski*, 877 F.2d at 214 and *United States v. Mancuso*, 302 F.Supp.2d 23, 26 (E.D.N.Y. 2004)). In that regard, courts within this Circuit have concluded that "[t]he Section 3161(a)(1) seriousness factor ordinarily focuses solely on the charge rather than, e.g., the strength of the government's case or the likely outcome of the proceedings." *Mancuso*, 302 F.Supp.2d at 26 n. 1; *see Zedner*, 2006 WL 6201406, at *2, 2006 U.S. Dist. LEXIS 94971, at *7–*8.

A review of the case law concerning this particular factor of the analysis, the Court

has uncovered very few cases that deem a crime "non-serious" for Speedy Trial Act purposes. *See United States v. Medugno,* 233 F.Supp.2d 184, 186 (D.Mass.2002) ("Courts have designated very few crimes as non-serious."). For instance, the Second Circuit has held that mail theft, under certain circumstances, is not a serious crime. *See United States v. Caparella,* 716 F.2d 976, 980 (2d Cir.1983). A Utah district court also held that theft of property valued at $2,000 is not a serious crime. *United States v. Smith,* 225 F.Supp.2d 1305, 1310 (D.Utah 2002). Also, the large majority of courts to assess this factor have found that the crime at issue is not serious when it is a misdemeanor charge. *See United States v. Nash,* No. 08–mj–00678, 2010 WL 702438, at *2 (D.Nev. Feb. 19, 2010) ("The charges here are Class A misdemeanors which constitute some of the least serious offenses prosecuted in federal court."); *United States v. Pearson,* No. 95 Cr. 749, 1996 WL 5071, at *1 (S.D.N.Y. Jan. 5, 1996) ("Plaintiff is charged with having embezzled a money order worth $364 while employed by the United States Postal Service. Under 18 U.S.C. § 3559(a)(1)(F), the offense is classified as a Class A misdemeanor. For purposes of the Speedy Trial Act, as the Government concedes, the charge is not 'serious.' "). *But see United States v. Caloia,* No. 94 Cr. 0309, 1995 WL 293961, at *3 (S.D.N.Y. May 15, 1995) ("Here, the charge itself—a misdemeanor—weighs in favor of dismissal with prejudice. It is clear, however, from the context out of which the charge arose, namely a significant governmental effort to investigate union corruption, that the government views the offense as a serious one. This in turn weighs in favor of dismissal without prejudice."). However, it is not inevitable that every felony charge is categorized as "serious" for Speedy Trial Act purposes. "Any felony charge is serious. But there are degrees of seriousness."

*United States v. Mancuso,* 302 F.Supp.2d 23, 26, n. 1 (E.D.N.Y.2004).

Here, the crimes that Montecalvo is charged with are arguably serious. He is charged with rigging the public bidding process of a local government through the mails in a collusive manner, so that he was indicted along with nine other individual and corporate defendants for two counts of mail fraud conspiracy, in violation of 18 U.S.C. § 1341. As the Government has pointed out, bid-rigging is a form of racketeering (*see United States v. Salerno,* 631 F.Supp. 1364 (S.D.N.Y.1986)), and racketeering has been found to be "serious" for Speedy Trial Act purposes. *See United States .v. Gambino,* 59 F.3d 353, 363 (2d Cir.1995) (finding racketeering and illegal gambling to be "serious" offenses).

Moreover, the actual losses sustained by the SCD PW and Brookhaven as a result of the inflated prices due to the bid-rigging scheme were in the sum of $326,343.20. In addition, the corporate defendants jointly forfeited $2.3 million, which represented the gross amount of the contracts awarded as a result of the conspiracy. These sums are a substantial amount. *See United States v. McCrudden,* 222 F.Supp.2d 352, 355 (E.D.N.Y.2002) (finding there to be a serious offense when the indictment contained fifteen counts of mail fraud which arose from a loss of approximately $1,200,000 to investors); *United States v. Alston,* 699 F.Supp. 386, 387–88 (E.D.N.Y. 1988) (finding that conspiracy to steal approximately $300,000 which carried a maximum penalty of five years in prison and a $10,000 fine was a serious crime under the Speedy Trial Act).

Although the crime was non-violent in nature, this does not necessarily render it non-serious. *See United States v. Hawthorne,* 705 F.2d 258, 260 (7th Cir.1983) (finding unlawful possession of stolen government checks, punishable by five years'

imprisonment, to be serious for purposes of the Speedy Trial Act). *But see Caparella*, 716 F.2d at 980 ("we do not consider appellant's conduct[, the felony of mail theft, a violation of 18 U.S.C. § 1709 (1976), and the misdemeanor of opening mail without authority under 18 U.S.C. § 1703(b) (1976),] a 'serious' crime, absent exacerbating circumstances such as violence, which is not here present. Congress viewed the crime originally charged as the lowest order of felony."). In *United States v. Clark*, 577 F.3d 273 (5th Cir. 2009), the defendant was charged with felony tax fraud. The Fifth Circuit quoted with approval the district court's finding that "various courts have classified non-violent crimes involving mendacity as serious offenses for speedy trial purposes." *Id.* at 282 (footnote and citations omitted). Nevertheless, the non-violent nature of the crime is a factor to take into consideration and does weigh against the seriousness of Montecalvo's offense. *See United States v. Jones*, 602 F.Supp. 1045, 1050 (E.D.Pa. 1985) ("I note that violence was not an element of any of the charges against defendant .... the seriousness of defendant's alleged conduct is a neutral factor on the issue of dismissal with or without prejudice.").

Finally, the Defendant argues that "[the] Government's failure to focus upon this case for the past five years is also reflection of the fact that this case is not one of the more serious matters in the United States Attorney's Office." The Court agrees that the laissez faire attitude demonstrated by the Government, as explored more fully below, weighs against the gravity of Montecalvo's crimes.

Accordingly, the Court finds that the factor of a serious offense in this case does not weigh in favor of either party. However, and of importance, even if this factor weighed against the Defendant, seriousness alone is not determinative. *See Gi-*

*ambrone*, 920 F.2d at 181 (finding that the district court's decision to dismiss with prejudice was not an abuse of discretion because even though the crime was serious and hence "did not suggest a dismissal with prejudice", the judge found "that the other two factors outweighed this one and demanded dismissal.").

### C. *As to the Facts and Circumstances Leading to Dismissal*

Keeping in mind, "[w]here the crime charged is serious, the sanction of dismissal with prejudice should ordinarily be imposed only for serious delay", *United States v. Simmons*, 786 F.2d 479, 485 (2d Cir.1986), the Court will now evaluate the facts and circumstances that led to the delay and determine whether they weigh towards dismissal with prejudice.

### 1. Length of Delay

■ As an initial matter, "the dominating consideration here on the seriousness of the delay is the sheer length of the period involved." *United States v. Stayton*, 791 F.2d 17, 21 (2d Cir.1986); *see United States v. Simmons*, 786 F.2d 479, 485 (2d Cir.1986) ("Where the crime charged is serious, the sanction of dismissal with prejudice should ordinarily be imposed only for serious delay."). There is no bright line rule as to whether a period of delay is substantial enough to weigh in favor of or against dismissal with prejudice. *Compare United States v. Hernandez*, 863 F.2d 239, 244 (2d Cir.1988) ("[S]hort delays of the kind present here do not become 'serious' violations of the Speedy Trial Act unless there is some resulting prejudice to the defendant. The fourteen-day delay here borders on being de minimis and plainly did not result in any prejudice to the defendant.") *with Mancuso*, 302 F.Supp.2d at 27 (finding three-year delay warranted dismissal with

prejudice) and *United States v. Stayton,* 791 F.2d 17 (2d Cir.1986) (finding twenty-three month delay between voir dire and swearing of jury warranted dismissal with prejudice).

Here, the undisputed and unexcluded passage of time is approximately four years, which is quite extraordinary. "Relevant case law, including decisions cited by the parties, involve far shorter periods of delay." *Mancuso,* 302 F.Supp.2d at 27. In fact, the number of years that have occurred since the initial indictment appears to be unparalleled in this circuit. Even the Government recognizes that the delay in this case was significant. (See Opp. Mem. at 17 ("The delay in this case was over six years. The Second Circuit has found 23 months to be a 'serious delay' within the meaning of the Act.").)

The Second Circuit in *Stayton* stated that the "enormity of the delay [was] sufficient alone to tip this second factor [viz. the attendant facts and circumstances] in favor of dismissal of the indictment with prejudice." 791 F.2d at 22. Although this decision was rendered before the seminal Supreme Court case of *United States v. Taylor,* 487 U.S. 326, 108 S.Ct. 2413, 101 L.Ed.2d 297 (1988), its conclusion is nevertheless consistent with its rulings. *See id.* at 340, 108 S.Ct. 2413 ("The length of delay, a measure of the seriousness of the speedy trial violation, in some ways is closely related to the issue of the prejudice to the defendant. The longer the delay, the greater the presumptive or actual prejudice to the defendant, in terms of his ability to prepare for trial or the restrictions on his liberty.").

Thus, the sheer length of the delay here weighs heavily in favor of dismissal of the indictment with prejudice.

### 2. Reason for Delay

■ Next, the Court must determine the circumstances for the substantial period of delay. According to the Government, this inquiry centers only on whether there was good or bad faith on the part of the U.S. Attorney's Office. However, that is not the sole issue involved. *See Taylor,* 487 U.S. 326, 338, 108 S.Ct. at 2420 ("We do not dispute that a truly neglectful attitude on the part of the Government reasonably could be factored against it in a court's consideration of this issue"). The Court may properly take into account whether the delay was attributable to "a demonstrably lackadaisical attitude on the part of the government attorney in charge of the case or a pattern of dilatory practices on the part of the United States Attorney's office in the district in question." *Wilson,* 11 F.3d at 352 (internal quotation and citations omitted). When dismissing an indictment with prejudice pursuant to the Speedy Trial Act, "the court should specifically describe the Government's conduct and find that conduct to be more than 'an isolated unwitting violation,' be it a 'truly neglectful attitude,' 'bad faith,' a 'pattern of neglect,' or other serious misconduct." *United States v. Wells,* 893 F.2d 535, 539 (2d Cir.1990) (quoting *Taylor,* 487 U.S. at 339, 108 S.Ct. 2413).

The Court here does not find this to be an "isolated unwitting violation" of the Speedy Trial Act. *Hernandez,* 863 F.2d at 244. Years passed without any documented effort on the part of the Government to move the case to the next stage of the criminal procedure, and this can only be properly characterized as a lackadaisical attitude towards Montecalvo's prosecution. *See Giambrone,* 920 F.2d at 181 (granting dismissal with prejudice in light of government's "extremely lax" attitude in case toward requirements of the Act). The Government explains its actions by stating that in good faith it relied on Montecalvo's representations that he intended to follow through with the cooperation agreement he had reached with the government in

principle in May 2006. Then, the Government alleges vaguely that it was willing to hear, and re-hear, various pleas for a non-criminal disposition by various counsel for the Defendant and thus ought to be commended, rather than sanctioned.

However, while the Government can point to certain plea negotiations as the reason for the initial delay and waiver of speedy trial until December 18, 2006, the Government provides no excuse for the lengthy period of time thereafter in which there was no documented activity on the part of the prosecution. Even if the Court were to credit the Government's position that it was sporadically engaged in conversations with defense counsel over this extremely lengthy period, which is strongly disputed, the Court is not convinced that this is a sufficient justification for this substantial delay. As stated by the Second Circuit:

> The sheer length of this delay in the context of a record that does not hint at a single justifying reason leads us to conclude that there can be no justification. A delay of the magnitude imposed on defendant here blatantly offends the purpose and spirit of the act. . . .

*Stayton,* 791 F.2d at 20. The Government certainly has great discretion and ability to control the manner of its prosecutions, including the extent to which it engages in plea negotiations with a defendant. However, this discretion must have limits, and this is precisely what the Speedy Trial Act represents. "A pattern of disregard for the responsibility to bring criminal cases to trial expeditiously has the potential for nullifying the requirements of the Act, for if the government suffers only dismissals without prejudice on motion of the defendant, it in effect gains successive 70–day periods in which to bring the defendant to trial." *Giambrone,* 920 F.2d at 180.

Therefore, the facts and circumstances demonstrate an extremely lax attitude by the Government in this case and thus weigh heavily in favor of a dismissal of the indictment with prejudice.

**D.** ***As to the Impact of Reprosecution on the Administration of the Statute and the Administration of Justice***

Next, the Speedy Trial Act requires the Court, in determining whether to dismiss the action without prejudice, to weigh the impact of reprosecution on both the administration of the statute and the administration of justice. The Supreme Court has stated that "[d]ismissal without prejudice is not a toothless sanction: it forces the Government to obtain a new indictment if it decides to reprosecute, and it exposes the prosecution to dismissal on statute of limitations grounds." *Taylor,* 487 U.S. at 342, 108 S.Ct. 2413. However, "[t]he prolonged delays in this case are the targets at which the Speedy Trial Act was clearly aimed and weighs heavily in the balance as does the adverse effect those prolonged delays must inevitably have upon the presentation of a meaningful defense." *United States v. Upton,* 921 F.Supp. 100, 105 (E.D.N.Y.1995). Equally applicable in the instant case, the Second Circuit has noted that:

> [a] pattern of disregard for speedy trial rights is also detrimental to the administration of the criminal justice system since delays risk the loss of important evidence, and repetitive prosecutions on the same charges cause wasteful replication of effort. Such delays also harm both the interest of the defendant and the interest of the public, for if the defendant is innocent, he has an interest in early vindication; and if he is guilty, the public has an interest in expeditious punishment for a variety of reasons, including the fact that the closer in

time the punishment is to the crime, the greater its rehabilitative effect. *Giambrone*, at 181.

Moreover, "this factor is closely aligned with the facts that [may lead] to dismissal; the more egregious the Government's role in the violation and the more severe the delay, the more dismissal with prejudice is warranted." *United States v. Mora*, No. 04 Cr. 00530, 2005 WL 1354042, at *6 (S.D.N.Y. June 7, 2005). While certainly the Government is not solely responsible for the six year delay since the indictment, as Montecalvo admits that he was engaged in negotiations with the Government for at least a portion of this time, it does appear that there is a substantial period of time— four years to be precise—during which the Government at most engaged in casual conversations with defense counsel that it cannot substantiate. It appears to the Court that this case was simply not on the Government's radar because of neglect or for some unexplained reason. Thus, the Government's role in the violation is substantial. In addition, deterrence is appropriate in a case in which the Government fails to take action to move a case forward in pursuit of the goals of the Speedy Trial Act. *Cf. United States v. Cardona–Rivera*, 64 F.3d 361, 364 (8th Cir.1995) ("[s]ince the government was not culpable in the delay, dismissal with prejudice would do little to deter or advance the administration of the Act.").

■ Finally, in evaluating the effect of reprosecution, the Court must also consider the prejudice suffered by defendant, if any, as a result of the delay. *See Taylor* at 344, 108 S.Ct. 2413. "The legislative history of the statute indicates that prejudice to a defendant could properly be considered as one of the facts and circumstances of the case in deciding whether to dismiss with or without prejudice." *Caparella*, 716 F.2d at 980. In *United States v. Taylor*, this concept was expressed as

follows: "The length of delay, a measure of the seriousness of the speedy trial violation, in some ways is closely related to the issue of the prejudice of the defendant. The longer the delay, the greater the presumptive or actual prejudice to the defendant in terms of his ability to prepare for trial. . . ." 487 U.S. at 340, 108 S.Ct. at 2421. While long delays "increase the likelihood of presumptive or actual prejudice to the defendant, in terms of his ability to prepare for trial . . . short delays . . . [are not] serious violations of the Act unless there is some resulting prejudice to the defendant (citation and internal quotation marks omitted)." *Hernandez*, 863 F.2d at 244.

Here, the Defendant claims that beyond the traditional prejudicial personal costs of pending charges, such as interference with his liberty, public obloquy, and anxiety, he has also suffered unique prejudicial circumstances due to this six year delay. In particular, Montecalvo asserts that he has lost the business he had hoped to pass on to his son, as he has been banned from bidding on municipal projects for the past six years while he is under indictment. Ironically, Montecalvo's co-defendants are again eligible to bid on public works projects.

■ It is relevant that Montecalvo did not take steps on his own to move the case along during the four year period that is essentially unaccounted for by either the Government or the Defendant. "A defendant who waits passively while the time runs has less claim to dismissal with prejudice than does a defendant who demands, but does not receive, prompt attention." *United States v. Fountain*, 840 F.2d 509, 513 (7th Cir.), *cert. denied*, 488 U.S. 982, 109 S.Ct. 533, 102 L.Ed.2d 564 (1988). In addition, as the Government's evidence against Montecalvo mainly consists of documentation and audio recordings, with rea-

sonable certainty this delay may not significantly impair his ability to defend himself at trial. Nevertheless, the practical prejudice Montecalvo has suffered, in addition to the sheer length of the delay, weigh substantially in the Court's analysis in favor of dismissal with prejudice.

## III. CONCLUSION

In sum, "[w]here the crime charged is serious, the sanction of dismissal with prejudice should ordinarily be imposed only for serious delay." *United States v. Simmons*, 786 F.2d 479, 485 (2d Cir.1986). Here, the delay here was undoubtedly serious; more than six years have now passed since the initial indictment. *Cf. United States v. Hawthorne*, 705 F.2d 258, 260 (7th Cir.1983) (per curiam) (delay of nine days not serious). While the delay was not designed to gain a tactical advantage for the government, the delay nevertheless demonstrates a lackadaisical attitude towards prosecution that cannot be tolerated under our system of justice. Concededly, the Court certainly knows that the government's failure to initiate the trial in this case did not spring from any unfair motive.

> But, needless to say, when a defense motion, for example a motion to reduce sentence under Federal Rule of Criminal Procedure 35, is late, the government is quick to point out that time has expired. Meeting established time limitations is important and lack of attention or dilatoriness in observing them should not be encouraged by courts viewing such neglect tolerantly.

*Caparella*, 716 F.2d at 980. Moreover, Montecalvo has alleged particular circumstances of personal prejudice that the Government does not dispute. In light of all of these factors, the Court finds that dismissal of this indictment with prejudice is warranted.

For the foregoing reasons, it is hereby:

**ORDERED,** that the Defendant's motion to dismiss this indictment with prejudice is granted.

**SO ORDERED.**