08-5955-cr(L), 09-0954-cr(Con)
USA v. Vanhoesen

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan Courthouse, 500 Pearl Street, in the City of New York, on the 18th day of February, two thousand ten.

Present:
> ROBERT A. KATZMANN,
> REENA RAGGI,
> *Circuit Judges*,
> JOHN G. KOELTL,
> *District Judge.*[*]

_____

UNITED STATES OF AMERICA,

>*Appellee*,

>v.                                                Nos. 08-5955-cr(L), 09-0954-cr(Con)

RAYMOND VANHOESEN, also known as Sham,
JERMAINE VANHOESEN, also known as Waleek,

>*Defendants-Appellants.*

_____

_____

[*] The Honorable John G. Koeltl, United States District Judge for the Southern District of New York, sitting by designation.

| | |
|---|---|
| For Defendant-Appellant Raymond Vanhoesen: | GASPAR M. CASTILLO, JR., Parker & Castillo, Albany, NY |
| For Defendant-Appellant Jermaine Vanhoesen: | GEORGE E. BAIRD, Assistant Federal Public Defender (Molly Corbett, *on the brief*), Albany, NY |
| For Appellee: | PAUL D. SILVER, Assistant United States Attorney (Richard S. Hartunian, Daniel Hanlon, Assistant United States Attorneys, *on the brief*), *for* Andrew T. Baxter, United States Attorney for the Northern District of New York, Albany, NY |

Appeal from the United States District Court for the Northern District of New York (Kahn, *J.*).

**ON CONSIDERATION WHEREOF**, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court against defendant Raymond Vanhoesen entered November 17, 2008, and the judgment of the district court against Jermaine Vanhoesen entered March 4, 2009, are **AFFIRMED**.

Defendant-Appellant Raymond Vanhoesen ("Raymond") appeals from a judgment of the United States District Court for the Northern District of New York (Kahn, *J.*), entered November 17, 2008, convicting him, following a jury trial, of possession with intent to distribute more than 5 grams of cocaine base, and sentencing him principally to 190 months' imprisonment. Defendant-Appellant Jermaine Vanhoesen ("Jermaine") appeals from a judgment of the United States District Court for the Northern District of New York (Kahn, *J.*), entered March 4, 2009, convicting him, following a jury trial, of possession with intent to distribute more than 5 grams of cocaine base, and sentencing him principally to 127 months' imprisonment. We assume the parties' familiarity with the facts, procedural history, and specification of issues on appeal.

We begin with the arguments raised by Raymond.

First, Raymond argues that his rights under the Double Jeopardy Clause of the Fifth Amendment were violated when the federal government brought him to trial after he had already faced, and pleaded guilty in part to, state charges based on the same conduct. We review double jeopardy claims *de novo*. *United States v. McCourty*, 562 F.3d 458, 469 (2d Cir. 2009). The Double Jeopardy Clause "confers its protections in three different situations—where there is a second prosecution for the same offense after acquittal of that offense; where there is a second prosecution for the same offense after conviction of the offense; and where there are multiple punishments for the same offense." *United States v. Estrada*, 320 F.3d 173, 180 (2d Cir. 2003). Jeopardy attaches when "there has been a fact-based resolution of elements of the offense charged as a result of a process in which the defendant risked conviction." *United States v. Dionisio*, 503 F.3d 78, 85 (2d Cir. 2007).

As a general matter, under the "dual sovereignty doctrine," the Double Jeopardy Clause is not violated by successive state and federal prosecutions for the same conduct. *See United States v. Aboumoussallem*, 726 F.2d 906, 909 (2d Cir. 1984). As we have previously stated, however, "[a] narrow exception to the dual sovereignty doctrine, carved out in *Bartkus v. Illinois*, [359 U.S. 121 (1959)], bars a second prosecution where one prosecuting sovereign can be said to be acting as a tool of the other, or where the second prosecution amounts to a sham and a cover for the first." *Id.* at 910 (internal citation and quotation marks omitted). Raymond argues that this exception applies here; he claims that New York State and federal authorities took turns prosecuting him, with the federal authorities stepping in whenever the state case against him stalled, so that one prosecution was "a sham and a cover" for the other.

3

Cooperation between federal and state authorities, however, does not of itself establish an exception to the dual sovereignty doctrine. *See Bartkus*, 359 U.S. at 122-24 (finding no exception to the dual sovereignty doctrine where an FBI agent had turned over evidence to state prosecutors); *Aboumoussallem*, 726 F.2d at 910 (stating that joint investigation of criminal activity does not establish an exception to the dual sovereignty doctrine); *United States v. Russotti*, 717 F.2d 27, 31 (2d Cir. 1983) (noting that cooperation between federal and state authorities is to be lauded and does not alone establish that one is the "tool" of the other). We have also previously observed, in the related context of assessing when principles of collateral estoppel bar the federal government from using evidence suppressed in a state proceeding, that the federal government is not obligated to refrain from "vindicat[ing] its interests and values" by pursuing a prosecution simply because a state prosecution is initiated first. *United States v. Davis*, 906 F.2d 829, 832 (2d Cir. 1990).

Here, while the record indicates that the federal government was aware of the progress of the state case and on one occasion moved to dismiss the criminal complaint against Raymond in light of the fact that a state prosecution was moving forward, it does not indicate that federal and state authorities were impermissibly colluding in a manner that establishes an exception to the dual sovereignty doctrine. Indeed, the federal authorities filed the indictment in their second criminal action against Raymond while his motion to dismiss the reinstated state charges on double jeopardy grounds was still pending — not after it had been granted. Then, despite the fact that the reinstated state charges were dismissed in May 2005, the federal authorities did not file the superseding indictment and move forward with their case until May 2006. We are not prepared to infer that one sovereign was acting as the "tool" of the other when the chronology of

4

the state and federal prosecutions does not indicate close coordination between the two.

Next, Raymond argues that the district court erred in denying his motion to dismiss the indictment on statutory and constitutional speedy trial grounds. Neither facet of his speedy trial challenge has merit.

We review the district court's findings of fact on the statutory speedy trial issue for clear error and its legal conclusions *de novo*. *United States v. Lucky*, 569 F.3d 101, 105-06 (2d Cir. 2009). Under 18 U.S.C. § 3161(c)(1), the trial of a criminal defendant must generally commence within 70 non-excludable days, *see* 18 U.S.C. § 3161(h), of the filing of the information or indictment or of the defendant's first appearance before a judicial officer, whichever occurs last. Raymond does not point to any error in the district court's calculation that, in the third and final federal action against him, only 66 days elapsed on the speedy trial clock. Rather, he argues that the speedy trial clock should run from the time the first federal criminal complaint was filed against him. However, because no indictment or information was ever filed in the first federal case, nor did Raymond ever appear before a judicial officer, the speedy trial clock never began to run in that case. *See id.* § 3161(c)(1). The second federal action against Raymond was dismissed without prejudice on his motion. Under such circumstances, the speedy trial clock is reset when a new case is filed. *United States v. Giambrone*, 920 F.2d 176, 179 (2d Cir. 1990); *see also* 18 U.S.C. § 3161(d)(1). Therefore, there is no basis to conclude that more than 66 days elapsed on the speedy trial clock in Raymond's third federal action, and his statutory speedy trial claim accordingly fails.

In assessing whether a defendant's constitutional, as distinct from statutory, speedy trial right has been compromised, courts apply a four-factor test established by the Supreme Court in

*Barker v. Wingo*, 407 U.S. 514, 530-33 (1972), considering 1) the length of the delay, 2) the reason for the delay, 3) whether and how the defendant asserted his right to a speedy trial, and 4) whether the defendant was prejudiced by the delay. The first factor, the length of the delay, is in effect a threshold question: "by definition, [a defendant] cannot complain that the government has denied him a 'speedy' trial if it has, in fact, prosecuted his case with customary promptness." *Doggett v. United States*, 505 U.S. 647, 651-52 (1992). Once a speedy trial analysis is triggered, however, no single factor is either a necessary or a sufficient condition to finding a violation of a defendant's right to a speedy trial; "[r]ather, they are related factors and must be considered together with such other circumstances as may be relevant." *United States v. Williams*, 372 F.3d 96, 113 (2d Cir. 2004). We review the district court's application of the factors for abuse of discretion. *Id.*

Here, we cannot find that the district court abused its discretion in its evaluation of the *Barker* factors. As an initial matter, we note that Raymond's arguments before the district court with regard to the constitutional speedy trial issue either simply reiterated his statutory speedy trial arguments, or stated in conclusory fashion that he had satisfied the *Barker* test. It is far from clear, therefore, that he preserved his constitutional speedy trial claim for appeal. *See Guzman v. Local 32B-32J, Serv. Employees Int'l Union*, 151 F.3d 86, 93 (2d Cir. 1998) (noting that "isolated and conclusory" statements, "in the absence of any legal argument or citations to relevant authority," do not preserve a constitutional issue for appeal). Moreover, on appeal Raymond has failed to show that the *Barker* factors weigh in his favor. He does not dispute the district court's finding that several months of the delay in bringing him to trial were due to the fact that he was absent from the district. The district court also correctly noted that he had failed

to articulate with specificity any prejudice caused by the delay—indeed, he failed to articulate any prejudice at all. *See Williams*, 372 F.3d at 113. Under these circumstances, Raymond's challenge to the district court's finding that he suffered no violation of his constitutional speedy trial right does not succeed.

Finally, Raymond raises two challenges to the admission of evidence at trial. He argues that the district court abused its discretion by allowing two experts to testify regarding the chemical composition of the narcotics found in the Ten Broeck Street apartment before the physical drug evidence had itself been received. The parties dispute whether Raymond raised an appropriate objection at the time the expert witnesses testified, with the government claiming that he did not and that a plain error standard of review applies. *See* Fed. R. Crim. P. 52(b); *Puckett v. United States*, --- U.S. ---, 129 S.Ct. 1423, 1428-29 (2009). We need not resolve this dispute, because under either standard, Raymond's argument fails. The physical evidence was, ultimately, properly admitted. It is not uncommon for evidence to be received "subject to" a later connection or foundation being established. *See, e.g.*, *United States v. Aleskerova*, 300 F.3d 286, 296 (2d Cir. 2002) (stating, in the context of a challenge to the admission of Rule 404(b) "similar bad act" evidence, that "[a] trial court may . . . admit the evidence conditionally subject to proof that the defendant committed the other crime, allowing the proponent to 'connect it up' later") (quoting *Huddleston v. United States*, 485 U.S. 681, 690 n.7 (2002)); *United States v. Diaz*, 878 F.2d 608, 614 (2d Cir. 1989) ("The district court initially allowed introduction of this evidence subject to later connection . . . . The evidence of subsequent events . . . sufficed in our view to render the admission of this evidence a permissible exercise of the district court's discretion."). If the crack cocaine itself had later been excluded for some reason, then Raymond might have a

7

valid argument. But that is not the case here.

Raymond also challenges the district court's decision to allow the government to introduce into evidence the transcript of his state court plea, in which he admitted that he possessed digital scales and plastic baggies in order to package drugs. He argues that the district court improperly applied Fed. R. Evid. 403 because the prejudice caused by reading his plea allocution to the jury was not outweighed by its probative value, when he had offered to stipulate to the element of intent to distribute if the jury found that he possessed the crack cocaine. "We review a district court's evidentiary rulings for abuse of discretion, and will reverse only if we find that there was a violation of a substantial right." *United States v. Bah*, 574 F.3d 106, 116 (2d Cir. 2009) (quoting *United States v. Ebbers*, 458 F.3d 110, 122 (2d Cir. 2006)). "[T]he prosecutor's choice will generally survive a Rule 403 analysis when a defendant seeks to force the substitution of an admission for evidence creating a coherent narrative of his thoughts and actions in perpetrating the offense for which he is being tried." *Old Chief v. United States*, 519 U.S. 172, 192 (1997). Bearing in mind the government's valid interest in "tell[ing] a colorful story with descriptive richness," *id.* at 187, as well as its "need for evidence in all its particularity to satisfy the jurors' expectations about what proper proof should be," *id.* at 188, we do not find that the district court abused its discretion in allowing the introduction of the plea transcript. Moreover, Raymond solicited testimony showing that other individuals frequented his apartment, evidently in an attempt to undermine the government's claim that the drugs were his. The plea transcript, therefore, would help dispel the idea that the drugs were not his and went to show the element of possession—to which he was not willing to stipulate.

Turning now to Jermaine's challenge, he argues that the district court erred when it

8

determined that he was responsible for 35-50 grams of crack cocaine for the purposes of sentencing. He concedes that the trial evidence showed he possessed 23 grams of crack, but asserts that the evidence does not adequately support a finding that he possessed an additional 12 grams.

In reviewing a sentence on appeal, we review for procedural and substantive error. *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc). "A district court commits procedural error where it . . . makes a mistake in its Guidelines calculation . . . . It also errs procedurally if it . . . rests its sentence on a clearly erroneous finding of fact." *Id.* at 190 (internal citations omitted). A district court's factual determinations in connection with sentencing must be established by a preponderance of the evidence. *United States v. Juwa*, 508 F.3d 694, 701 (2d Cir. 2007).

The Sentencing Guidelines contemplate that a court may hold a defendant convicted of a narcotics offense accountable for drug amounts that were "part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2). Here, government witness Reno Conley testified that he purchased one ounce of crack cocaine from Jermaine at the end of 2002, when Raymond sent Jermaine in his place to complete a sale, and further that between January 2003 and Jermaine's arrest on February 20, 2003, he purchased crack cocaine from Jermaine at least once a week. Jermaine argues, however, that this evidence is not sufficiently specific to establish the quantity of drugs attributable to him for the purpose of sentencing. *See United States v. Shonubi*, 103 F.3d 1085, 1089-92 (2d Cir. 1997). While we have previously emphasized the necessity, in this context, of specific evidence pertaining to the defendant's *own* admissions and transactions, *see id.* at 1089-90, in doing so we drew a

9

distinction between statistical evidence and expert testimony showing how much, for example, heroin swallowers *in general* import on a smuggling run and specific evidence showing how much *the particular defendant in that case* had smuggled on previous trips, *id.* at 1090-92. We did not mandate that any particular type of "specific evidence" be introduced. Contrary to Jermaine's arguments, therefore, the absence of testimony connecting cash seized from him to drug sales and the absence of any recorded telephone conversations in which he discussed specific drug amounts and transactions do not render the district court's factual findings defective. Conley's testimony pertained to Jermaine's own acts, not to the activities of crack dealers in general, and it was therefore properly considered by the district court.

Conley testified that near the end of 2002, Jermaine delivered an ounce of crack cocaine to him; because an ounce contains over 28 grams, that testimony alone, in combination with Jermaine's concession that he possessed 23 grams of crack on the day of his arrest, is enough to support the district court's factual findings at sentencing. Accordingly, we see no error in the district court's sentence.

We have considered defendants' other arguments and find them without merit. For the foregoing reasons, we **AFFIRM** the judgments of the district court.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK

10