14-2428-cr
United States v. Bert

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term, 2014

(Argued:     April 27, 2015                    Decided: September 10, 2015)

Docket No. 14-2428-cr

_____

UNITED STATES OF AMERICA,

*Appellee,*

v.

RAHEEM BERT, aka Raheen Linwood, aka Radio,

*Defendant-Appellant*.

_____

Before: JACOBS, POOLER, and HALL, *Circuit Judges*.

Appeal from the judgment of the United States District Court for the

Eastern District of New York (Mauskopf, *J.*), convicting defendant Raheem Bert

of possessing a firearm with an obliterated serial number, in violation of 18

1

U.S.C. § 922(k), and being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1). The Speedy Trial Act was violated when the district court allowed eleven months of unexcluded time to accumulate while Bert remained in custody with his suppression motion under advisement. Because we conclude that the district court abused its discretion by dismissing Bert's indictment without prejudice to his reprosecution, we reverse the district court's judgment and remand with instructions to vacate Bert's conviction and dismiss the indictment with prejudice.

Reversed and remanded.

Judge Jacobs dissents in a separate opinion.

_____

JAMES DARROW, New York, NY, *for Defendant-Appellant Raheem Bert*.

DOUGLAS M. PRAVADA, Assistant United States Attorney (Amy Busa, Assistant United States Attorney, *on the brief*), *for* Kelly T. Currie, acting United States Attorney for the Eastern District of New York, Brooklyn, NY, *for Appellee*.

POOLER, *Circuit Judge*:

Defendant Raheem Bert appeals his conviction in the United States District Court for the Eastern District of New York (Mauskopf, *J.*), after a jury found him guilty of possessing a firearm with an obliterated serial number, in violation of 18 U.S.C. § 922(k), and being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1). The Speedy Trial Act was violated when the district court allowed eleven months of unexcluded time to accumulate while Bert remained in custody with his suppression motion under advisement. On appeal, Bert argues that the district court abused its discretion by dismissing his indictment without prejudice rather than with prejudice, thereby permitting his reprosecution. Bert also claims the district court erred in finding no violation of his Sixth Amendment speedy trial rights and in denying his motion to suppress. For the reasons that follow, we REVERSE the district court's judgment dismissing the indictment without prejudice and do not reach Bert's remaining arguments.

## BACKGROUND

On January 19, 2012, Bert was arrested in the hallway outside his girlfriend's apartment at 55 Holland Avenue, a Staten Island building participating in New York City's Field Trespass Affidavit Program. Earlier that

evening, Officer John Fahim and Officer Besim Pelinku received a radio report that five black males were trespassing at 55 Holland Avenue. Upon arriving at the building, the officers encountered Bert, another black male, and a woman standing and talking in the hallway of the 10th floor. After detaining the three suspects pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968), Officer Fahim observed that Bert had a gun on his person. A struggle ensued between Officer Fahim and Bert, during which Bert dropped the gun out of the 10th floor window. *See United States v. Bert*, No. 12-CR-100 (RRM), 2014 WL 358983, at *2-3 (E.D.N.Y. Feb. 3, 2014). The officers subsequently arrested Bert, who has remained continuously detained since that evening.

Bert appeared in New York state court the following day. On January 30, 2012, after his state charges were reduced, Bert was transferred to federal custody. He first appeared in the Eastern District of New York on February 16, 2012, on a two-count indictment charging him with possessing a firearm with an obliterated serial number, in violation of 18 U.S.C. § 922(k), and being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1).

By motion filed June 25, 2012, and supplemented by four additional submissions over the next six months, Bert sought to suppress statements he

made to law enforcement on the evening following his arrest and during his transfer to federal custody.[1] Government witnesses testified that, during these exchanges, Bert had boasted that he could not be prosecuted because the gun recovered from outside the 10th floor window was not operable. In his suppression motion, Bert argued that admitting these statements would violate his rights under the Fourth and Fifth Amendments because they were the fruits of his unlawful seizure, made in the absence of a *Miranda* warning, or not preceded by a knowing and voluntary waiver of his Fifth Amendment rights. The district court convened a one-day suppression hearing on November 20, 2012. The transcript of that hearing was corrected, pursuant to the government's request, over the next two months.

On February 1, 2013—after the matter had been fully briefed and the hearing transcript corrected—the district court took Bert's suppression motion under advisement. During the twelve months that followed, Bert remained in prison, presumptively innocent, with no apparent activity in his case. The docket sat idle until February 3, 2014, over a year later, when the district court denied

---

[1] Bert also initially moved to suppress the gun, the gun's magazine, and Officer Fahim's observations, but he withdrew this portion of his suppression motion at an October 31, 2012 status conference. *Bert*, 2014 WL 358983, at *6.

Bert's suppression motion in its entirety.

On February 20, 2014, Bert filed a motion to dismiss the indictment with prejudice on the basis that he had not been brought to trial within the timeframe required under the Speedy Trial Act, and alleging that the delay violated his constitutional rights under the Sixth Amendment's Speedy Trial clause. The government conceded that the Speedy Trial Act had been violated, but argued that the dismissal should be without prejudice, as authorized by 18 U.S.C. § 3162(a)(1).

Ruling from the bench, the district court rejected Bert's constitutional argument, but concluded that the indictment must be dismissed pursuant to 18 U.S.C. § 3162(a)(2), because the delay violated the Speedy Trial Act. After "quickly tick[ing] through the factors in the statutory analysis," the district court found that "all of the factors tip[ped] in favor of the government's position on [the] motion." It therefore ordered that the dismissal of the indictment be without prejudice to Bert's reprosecution.

That same day, the government re-indicted Bert on identical charges. A three-day trial commenced on May 19, 2014, and the jury returned a verdict of guilty on both counts. The district court then sentenced Bert principally to a term

of 120 months' imprisonment, which he is currently serving.

Bert appealed, arguing that the district court abused its discretion by dismissing the indictment without prejudice.[2] For the reasons explained below, we agree.

**DISCUSSION**

**I.    Violation**

The Speedy Trial Act mandates that a criminal defendant must be brought to trial within 70 days of the filing of the indictment or the defendant's initial appearance, whichever occurs later. *See* 18 U.S.C. § 3161(c)(1). If that deadline is not met, the Act provides that the indictment "shall be dismissed on motion of the defendant." 18 U.S.C. § 3162(a)(2).

The Act excludes delays due to certain enumerated events from the 70-day indictment-to-trial period. *See* 18 U.S.C. § 3161(h). In this case, the parties agree that the district court properly excluded the period of time from when the motion

---

[2] Bert could not have immediately appealed the dismissal of the indictment without prejudice because that judgment was neither a "final order" within the meaning of 28 U.S.C. § 1291, nor a collateral order.  Rather, a dismissal without prejudice is a "step toward final disposition of the merits of the case [that] will . . . be merged in [the] final judgment," *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949), and therefore only became appealable after Bert was convicted and sentenced.

7

was filed until it was taken under advisement, 18 U.S.C. § 3161(h)(1)(D), as well as the first thirty days that it was under advisement, 18 U.S.C. § 3161(h)(1)(H). It is similarly undisputed that the remaining eleven months that the motion was pending were not excluded. Accordingly, the Act's 70-day indictment-to-trial period (commonly referred to as the "speedy trial clock") was exceeded by approximately nine months.

In the year that Bert's suppression motion remained under advisement, several key dates passed with no activity in his case. Bert's speedy trial clock began to run on March 4, 2013, when the 30-day advisement period ended. His speedy trial clock expired 70 days later, on May 13, 2013. The district court's six-month list came and went in September of 2013, still with no activity in Bert's case. It was not for another five months that the district court ultimately denied the motion. At no point did the government alert the district court to any speedy trial issues or propose excluding any of the time that accumulated in the interim.

Accordingly, neither party contests that a violation of the Speedy Trial Act occurred. Nor do they question the statute's unambiguous mandate that the court was required to dismiss the indictment upon Bert's motion. The only question before us, therefore, is whether the district court abused its discretion in

8

permitting Bert's reprosecution by dismissing the indictment without prejudice.

Bert argues that the district court failed to consider or properly weigh the 18 U.S.C. § 3162(a)(2) factors in deciding that dismissal without prejudice was warranted. He further contends that dismissal with prejudice is the only appropriate remedy under the circumstances because the delay at issue here was lengthy, the product of "administrative neglect," *United States v. Stayton*, 791 F.2d 17, 22 (2d Cir. 1986), and presumptively prejudicial given that he remained incarcerated while the motion was pending.

**II.     Remedy**

It is well established that "Congress did not intend any particular type of dismissal to serve as the presumptive remedy for a Speedy Trial Act violation." *United States v. Taylor*, 487 U.S. 326, 334 (1988); *accord United States v. Caparella*, 716 F.2d 976, 980 (2d Cir. 1983). Rather, "[t]he determination of whether to dismiss an indictment with or without prejudice is committed to the discretion of the district court." *United States v. Wilson*, 11 F.3d 346, 352 (2d Cir. 1993).

The Act does, however, set out factors that a district court must consider in choosing between the two remedies:

In determining whether to dismiss the case with or without prejudice, the

court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice.

18 U.S.C. § 3162(a)(2). "In addition to these statutory factors, the Supreme Court has indicated that prejudice to the defendant should also be considered." *Wilson*, 11 F.3d at 352 (citing *Taylor*, 487 U.S. at 334)).

A district court is not free simply to exercise its equitable powers in fashioning an appropriate remedy for a violation of the Speedy Trial Act, *Taylor*, 487 U.S. at 332–33, but "must carefully consider those factors as applied to the particular case and, whatever its decision, clearly articulate their effect in order to permit meaningful appellate review," *id.* at 336. "To permit appropriate appellate review, the district court should explicate as clearly as possible the bases for its conclusions as to each factor." *United States v. Giambrone*, 920 F.2d 176, 180 (2d Cir. 1990). "Although the role of an appellate court is not to substitute its judgment for that of the trial court," the factors identified in the statute call for "more substantive scrutiny" in order to determine "whether [the] district court has ignored or slighted a factor that Congress has deemed pertinent to the choice of remedy." *Taylor*, 487 U.S. at 336–37. We will not lightly disturb "the district

10

court's judgment of how opposing considerations balance," as long as all "the statutory factors are properly considered, and supporting factual findings are not clearly in error." *Id.* at 337.

The district court in this case appropriately identified all of the statutory factors it was required to consider in determining whether the remedy for the conceded Speedy Trial Act violation should be dismissal with or without prejudice. We must therefore assess whether, in ruling that all factors tip in favor of dismissal without prejudice, the court sufficiently considered each factor (i.e., did not "slight" any factor), and whether it reached its conclusion with respect to each factor based on the application of sound legal authority to adequate factual findings. *See id.* ("A judgment that must be arrived at by considering and applying statutory criteria . . . constitutes the application of law to fact."). As we have noted on many occasions, "'abuse of discretion' is a distinctive term of art that is not meant as a derogatory statement about the district judge whose decision is found wanting. It is more properly understood as referring to occasions where, after examining trial court records, an appellate court reaches the informed judgment that a ruling is based on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *United States v. Park*, 758 F.3d

11

193, 199–200 (2d Cir. 2014) (quotation marks omitted).

A. **Seriousness of the Offense**

In determining to dismiss the indictment without prejudice, the district court found that the crime with which Bert was charged was "a very serious offense" and "a violent crime." It pointed to the lengthy period of incarceration Bert potentially faced as well as the harm that he posed to others during his encounter with the police. On appeal, Bert does not contest that the district court correctly found that this first factor tips in favor of dismissal without prejudice. But the seriousness of the crime must "be weighed against . . . the seriousness of the delay," *Stayton*, 791 F.2d at 21 (internal citation omitted), because "[w]here the crime charged is serious, the sanction of dismissal with prejudice should ordinarily be imposed only for serious delay," *United States v. Simmons*, 786 F.2d 479, 485 (2d Cir. 1986).

B. **Seriousness of the Violation**

It is firmly established that the length of the delay, as "a measure of the seriousness of the speedy trial violation," *Taylor*, 487 U.S. at 340, is a critical consideration when determining whether to dismiss an indictment with or without prejudice. For example, when reversing a dismissal with prejudice in

12

*United States v. Taylor*, the Supreme Court faulted the district court for ignoring "the brevity of the delay and the consequential lack of prejudice" to the defendant who, by failing to appear, had caused the Act's 70-day indictment-to-trial period to be exceeded by only 14 nonexcludable days. 487 U.S. at 343. Echoing this concern, in *United States v. Hernandez*, this Court held that dismissal with prejudice would not be warranted where the Act's 30-day arrest-to-indictment period was exceeded by 14 nonexcludable days after the defendant, who was out on bond, had absconded. 863 F.2d 239, 240 (2d Cir. 1988). We reasoned that permitting reprosecution would be appropriate because "[t]he offense was concededly serious, the delay was concededly short, there was no evidence of bad faith or a pattern of neglect, and the defendant failed to demonstrate any prejudice from the delay." *Id.* at 244. By contrast, in *United States v. Stayton*, we ordered dismissal with prejudice largely based on the "dominating consideration" of "the sheer length" of the 23-month delay between voir dire and trial, concluding that "the enormity of the delay [was] sufficient alone to tip [the] second factor in favor of dismissal of the indictment with prejudice." 791 F.2d at 22–23.

The district court in this case acknowledged "the length of time that the

13

Court took ultimately to decide the motion to suppress," describing it as "lengthy." Special App'x at 29. The court's discussion of the length of the delay went no further, however. It did not include, for example, a calculation or acknowledgment of the actual time that the motion remained under advisement, any evaluation of the severity of this delay or how this "lengthy" period of time compared to delays in other cases, nor did it address whether this factor weighs in favor of dismissal with or without prejudice.[3] We conclude, therefore, that the seriousness of the violation was "slighted" and not "properly considered," *Taylor*, 487 U.S. at 337, and we proceed to a fuller examination.

At the time the district court issued its ruling, Bert's motion had been under advisement for over a year, and Bert's speedy trial clock had been expired for 266 days (almost 9 months). It is beyond cavil that this delay—which amounts to almost nine times the period of time automatically excluded for the resolution of such motions, *see* 18 U.S.C. § 3161(h)(1)(H), and almost four times the length of the speedy trial clock itself, *see* 18 U.S.C. § 3161(c)(1)—is serious. Indeed, the cases

---

[3] In discussing prejudice to the defendant, the district court acknowledged the length of the violation while factoring Bert's silence during the nine-month period after his speedy trial clock expired against him. *See* Special App'x ("But, again here, there was no complaint by the defendant for the nine months that we are talking about . . .").

in which this Court has held in favor of dismissal without prejudice have uniformly involved substantially shorter periods of delay. *See, e.g., Wilson*, 11 F.3d at 352 (affirming dismissal without prejudice where defendants had consented to continuances, which were belatedly executed, leading to "at most forty-two days" of unexcused delay in filing indictments); *United States v. Wells*, 893 F.2d 535, 539–40 (2d Cir. 1990) (reversing dismissal with prejudice where "the district court failed to consider whether the 32-day delay in indictment . . . caused any prejudice to Wells," who had failed to appear while out on bond, and had "not complained of any prejudice whatsoever"); *Simmons*, 786 F.2d at 485 (ordering dismissal without prejudice for delay between indictment and trial of "almost four months, a significant portion [of which] was excludable"); *United States v. Kiszewski*, 877 F.2d 210, 214 (2d Cir. 1989) (recognizing that delay was "certainly not minor" where the 70-day indictment-to-trial period may have been exceeded by as many as 130 days, but finding this fact alone did not necessitate dismissal with prejudice because "the bulk of the delay was apparently caused by unusual circumstances concerning a conflict of interest on the part of defendant's prior attorney," and leaving open the possibility that a "similar delay might weigh more heavily in another case"). The length of the delay in this case

renders this a serious violation of the Speedy Trial Act, *see Taylor*, 487 U.S. at 340,

and militates in favor of dismissal with prejudice.

### C. Facts and Circumstances Leading to Dismissal

As to the facts and circumstances leading to the delay, the court stated:

> It was the court that caused the delay. There was no bad faith by the government. If anything, the government didn't press forward and ask for the interest of justice exclusion, but their failure to do so was not . . . gross neglect or [a] pattern of neglect or an attempt to circumvent the Speedy Trial Act to gain some benefit for the government or to flout the standards and the requirements of the Speedy Trial Act. On the Court's part, there was no attempt . . . to manipulate the speedy trial clock.

Special App'x at 30. After discussing several other factors, the court returned to

the reason for delay, stating:

> I have already discussed the facts and circumstances of how the delay occurred. Here, too, there is no bad faith on the part of the government. This was not a pattern of delay on the part of the government. There [were] no intentional acts on the part of the government to delay this case. Again, the Court takes the weight, if you will, for the delay here. Again, there was no intention on the Court to somehow circumvent, manipulate or otherwise intentionally or in bad faith delay this action.

Special App'x at 32–33.

The district court's discussion of the reason for the delay is premised

implicitly on two erroneous interpretations of the governing legal standards:

first, that the absence of bad faith, intentional delay, or some other form of

16

heightened scienter is dispositive of this statutory factor; second, that a delay attributable to the court and not to the government tips this factor in favor of dismissal without prejudice. Both of these premises are contrary to governing precedent.

The sanction of dismissal with prejudice does not always require a finding of "evil motive." *Caparella*, 716 F.2d at 980. On the contrary, this statutory factor may tip in favor of dismissal with prejudice in situations where the delay is attributable to mere "administrative neglect" or clerical oversight. *Stayton*, 791 F.2d at 22; *see also Taylor*, 487 U.S. at 338 ("We do not dispute that a truly neglectful attitude on the part of the Government reasonably could be factored against it in a court's consideration of this issue . . ."). As the Supreme Court has explained in the context of a Sixth Amendment speedy trial challenge, "[a]lthough negligence is obviously to be weighed more lightly than a deliberate intent to harm the accused's defense, it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun." *Doggett v. United States*, 505 U.S. 647, 657 (1992).

We have held that negligent conduct by the court or the government, "renders the second factor [(reason for the delay)] neutral, at best" where the

"delay [is] not overly long" and there has been no showing of prejudice.

*Simmons*, 786 F.2d at 486. *But see Caparella*, 716 F.2d at 980 ("[G]iven the government's negligent conduct, . . . we conclude that the second factor militates in favor of dismissal with prejudice."). The Supreme Court has likewise instructed that, in the absence of prejudice or significant delay, courts should only preclude reprosecution of a serious crime upon a showing of "something more than an isolated unwitting violation," such as a finding of "bad faith" or a "pattern of neglect." *Taylor*, 487 U.S. at 339. But where the delay is indisputably grave and not a result of the defendant's own conduct, *Taylor*, 487 U.S. at 343, dismissal with prejudice may be appropriate without such a finding, *see United States v. Russo*, 741 F.2d 1264, 1268 (11th Cir. 1984) ("[W]here the violation is substantial, a negligent failure to comply with the Act will not suffice to justify retrial."). A rule that limited the sanction of dismissal with prejudice exclusively to cases involving bad faith would contravene the well-established principle that "[t]he Speedy Trial Act does not indicate a preference as between dismissals with and dismissals without prejudice." *Giambrone*, 920 F.2d at 180 (citing *Taylor*, 487 U.S. at 334).

Also mistaken is the assumption that the second statutory factor tips in

18

favor of dismissal without prejudice whenever a speedy trial violation is caused by the court and not the government. To the contrary, the Speedy Trial Act "is as much aimed at the delay caused by judicial congestion and mismanagement as it is aimed at the deliberate stalling of counsel." *United States v. Pringle*, 751 F.2d 419, 429 (1st Cir. 1984)). "'The Act controls the conduct of the parties and the court itself during criminal pretrial proceedings. Not only must the court police the behavior of the prosecutor and the defense counsel, it must also police itself.'" *Stayton*, 791 F.2d at 20 (quoting *Pringle*, 751 F.2d at 429); *see also United States v. Moss*, 217 F.3d 426, 432 (6th Cir. 2000) ("[T]he purposes of the Act would be thwarted if courts do not adjust their day-to-day procedures to comply with its requirements"); *United States v. Ramirez*, 973 F.2d 36, 39 (1st Cir. 1992) ("When a STA violation is caused by the court or the prosecutor, it weighs in favor of granting a dismissal with prejudice."). District courts must hold themselves accountable for ensuring their own compliance with the Speedy Trial Act's requirements. A district court may not merely assume responsibility for a speedy trial violation, deny an improper motive,  and weigh this statutory factor in favor of dismissal without prejudice without offering further explanation.

We do not doubt that the violation here was caused by a simple

19

administrative oversight at one of the busiest and most productive district courts in the country, and we proceed under that assumption. On this record, however, assume is all that we can do, and our deference to the district court's analysis of this factor is limited because it made no factual findings supporting its conclusions.[4] The district court did not, for instance, provide any insight into the reasons for the "lengthy period of time" it concededly took in deciding the motion, other than to disavow any bad faith. On the record before us and in the absence of factual findings by the district court, the actual cause for the serious delay in resolving this relatively routine motion to suppress remains opaque.

Several of our sister circuits have recognized that dismissal with prejudice may serve as an appropriate remedy under analogous circumstances involving a district court's administrative neglect. For instance, in *United States v. Moss*, the Sixth Circuit reversed a district court's dismissal without prejudice where the defendant's suppression motion had remained under advisement for

---

[4] The district court did comment that "there had been the need to correct the transcript as well as the need to address the motion itself." Special App'x at 30. We do not assign any weight to this explanation because it reflects apparent confusion as to the timeline of this prosecution. The hearing transcript was corrected before the district court took the suppression motion under advisement. This task, therefore, could not have occupied any of the subsequent year that elapsed before the district court issued its decision.

20

approximately ten months without explanation. 217 F.3d at 431. In *United States v. Russo*, the Eleventh Circuit similarly ordered dismissal with prejudice where several months of unexcluded time accumulated while defendant's pretrial motion remained under advisement. 741 F.2d at 1267. And in *United States v. Ramirez*, the First Circuit affirmed a dismissal with prejudice where defendants' pretrial motions remained under advisement for 81 days, despite the fact that "[n]othing unusual occurred in th[e] case. The district court merely lost track of the STA deadline, in the midst of attending to its many other cases." 973 F.2d at 38.

Of course, we accept the district court's finding that neither the government nor the court acted out of any nefarious or underhanded motive. Bad faith, however, is not a prerequisite to ordering dismissal with prejudice. We commend the district court's honest and unequivocal acceptance of responsibility for the delay. But the mere fact that a speedy trial violation is attributable to the court and not the government does not expunge that violation, nor does it automatically render the violation any less serious. Neither the record nor the district court's ruling provides us with any explanation for the court's serious delay in ruling on a motion that does not appear to present any novel legal

21

questions or distinct factual complexity. In light of the seriousness of the Speedy Trial Act violation in this case, the absence of any explanation beyond mere administrative neglect weighs in favor of dismissal with prejudice.

### D. Prejudice to Defendant

"'Although the absence of prejudice [to the defendant] is not dispositive,' it can be 'another consideration in favor of permitting reprosecution.'" *Wells*, 893 F.2d at 540 (quoting *Taylor*, 487 U.S. at 341). The length of the delay has a bearing on the issue of prejudice: "The longer the delay, the greater the presumptive or actual prejudice to the defendant, in terms of his ability to prepare for trial or the restrictions on his liberty." *Taylor*, 487 U.S. at 340.

The district court concluded, and Bert concedes, that he did not suffer any actual prejudice in his ability to mount a defense at trial, but that is not the only type of prejudice that is relevant to this inquiry:

> Inordinate delay between public charge and trial, wholly aside from possible prejudice to a defense on the merits, may seriously interfere with the defendant's liberty, whether he is free on bail or not, and may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends.

*Taylor*, 487 U.S. at 340–41 (internal alterations and quotation marks omitted).

22

The district court alluded to this brand of prejudice when it asserted that the court was not "minimizing the incarceration to the defendant," Special App'x at 33, but then proceeded to discount the likelihood that Bert suffered any prejudice in light of his failure promptly to alert the court after his speedy trial clock had expired. Pointing to *United States v. Siembida*, No. 05-cr-366 (PKC), 2007 WL 4267192 (S.D.N.Y. Dec. 3, 2007), an unpublished district court memorandum and order, the court here suggested "that where the defendant does not come forward and assert his rights he is more interested in a dismissal of his case than vindicating his rights under the Speedy Trial Act." Special App'x at 34. We conclude that the district court's cursory discussion of non-trial prejudice was insufficient. *See Moss*, 217 F.3d at 431–32 (holding that the district court erred by neglecting to address any non-trial prejudice suffered by the defendant, including the impact of his incarceration on his life circumstances).

It is well established that a criminal defendant has "no obligation to take affirmative steps to insure that [he will] be tried in a timely manner." *United States v. Tunnessen*, 763 F.2d 74, 79 (2d Cir. 1985). It is the court and the government that bear the affirmative obligation of insuring the speedy prosecution of criminal charges. *United States v. Vasquez*, 918 F.2d 329, 336 (2d Cir.

23

1990). A criminal defendant can only waive his speedy trial rights by failing to invoke them before trial or plea. *See* 18 U.S.C. § 3162(a)(2); *see also United States v. Gambino*, 59 F.3d 353, 360 (2d Cir. 1995) ("The legislative history of the Act confirms the importance of the non-waiver rule."). Thus, while the district court was entitled to construe Bert's delay in noticing the violation as evidence that he did not suffer actual prejudice, this fact was not fatal to his claim, nor should it have been the end of the court's inquiry into prejudice. *See Stayton*, 791 F.2d at 22 (declining to decide "whether, and if so, how seriously" the 23-month delay prejudiced the defendant, where "the enormity of the delay is sufficient alone to tip this second factor in favor of dismissal of the indictment with prejudice"). The district court gave insufficient consideration to the issue of non-trial prejudice when it concluded that by failing to speak up, Bert—who was incarcerated during the entire one-year period during which his motion was pending—evinced a lack of such prejudice. The sheer length of the delay at issue here was presumptively prejudicial, *see Doggett*, 505 U.S. at 652 n.1, particularly because Bert remained incarcerated throughout the time the docket sat idle.

### E. Impact of Reprosecution on the Administration of the Act and on the Administration of Justice

Analyzing the impact of reprosecution on the administration of the Speedy Trial Act, the district court summarily concluded "the fact that the government will have to reindict here served as a deterrent, particularly here where there is no bad faith or intentional conduct or pattern on the part of the government" and Bert's crime is serious. Special App'x at 33. Again, the district court's findings are inadequate to satisfy our "more substantive scrutiny." *Taylor*, 487 U.S. at 337.

It is beyond question that "[d]ismissal without prejudice is not a toothless sanction." *Taylor*, 487 U.S. at 342. But it is equally doubtless that the sanction of dismissal with prejudice has more bite. *See id.* ("It is self-evident that dismissal with prejudice always sends a stronger message than dismissal without prejudice, and is more likely to induce salutary changes in procedures, reducing pretrial delays."). Although the less severe sanction "imposes some costs on the prosecution and the court," *Zedner v. United States*, 547 U.S. 489, 499 (2006), "the prosecutor may of course seek—and in the great majority of cases will be able to obtain—a new indictment," *id.*; *see also* 18 U.S.C. § 3288 (providing that even if "the period prescribed by the applicable statute of limitations has expired, a new

25

indictment may be returned . . . within six calendar months of the date of the dismissal"). Consequently, "if the government suffers only dismissals without prejudice on motion of the defendant, it in effect gains successive 70-day periods in which to bring the defendant to trial." *Giambrone*, 920 F.2d at 180.

The Act's purpose of expeditiously bringing criminal cases to trial would not be served by assuring those charged with this responsibility that they need not fear the more severe sanction—no matter how egregious the violation—as long as they refrain from intentional efforts to circumvent the Act. The burden on courts and prosecutors of reindicting a defendant is, at a minimum, not substantially more onerous than the routine business of ensuring vigilant compliance. Accordingly, "the knowledge that a violation could potentially result in [dismissal with prejudice] gives the prosecution a powerful incentive to be careful about compliance," *Zedner* 547 U.S. at 499, which would be absent under a regime requiring a showing of bad faith. Preserving the threat of dismissal with prejudice in cases of administrative neglect also furthers the Act's purpose by incentivizing courts to police their own dockets. "While not all violations of the Speedy Trial Act warrant a dismissal with prejudice, the purposes of the Act would be thwarted if courts do not adjust their day-to-day procedures to comply

26

with its requirements." *Moss*, 217 F.3d at 432.

Furthermore, under a regime that limited the more severe sanction exclusively to cases of intentional misconduct, criminal defendants would have little incentive to alert the court to administrative oversights that held no conceivable promise of precluding reprosecution. *See Barker v. Wingo*, 407 U.S. 514, 521 (1972) (noting "[d]elay is not an uncommon defense tactic"); *accord Caparella*, 716 F.2d at 981 ("[A] defendant might find it advantageous to play a waiting game hoping, for example, that government witnesses may disappear or become forgetful."). The complacency of criminal defendants would not, however, further the purposes of the Act, which "serves not only to protect defendants, but also to vindicate the public interest in the swift administration of justice." *Bloate v. United States*, 559 U.S. 196, 211 (2010).

"[T]here is a societal interest in providing a speedy trial which exists separate from, and at times in opposition to, the interests of the accused." *Barker*, 407 U.S. at 519. The Act's demand that justice be swiftly administered serves the public interest by, among other things, avoiding extended pretrial delays, which may "impair[ ] the deterrent effect of punishment," *Zedner*, 547 U.S. at 501, or "risk the loss of important evidence," *Giambrone*, 920 F.2d at 181. "Whenever [a

27

prosecution]—for whatever reasons—falls short of meeting the Act's requirements, the administration of justice is adversely affected." *Ramirez*, 973 F.2d at 39. "Certainly, the public is the loser when a criminal trial is not prosecuted expeditiously, as suggested by the aphorism, 'justice delayed is justice denied.'" *Gambino*, 59 F.3d at 360.

It is also clear that the administration of justice—and certainly of the Act—would be well served by whatever actions the court may need to undertake in order to avoid future speedy trial violations. In light of the fact that the district court did not acknowledge or explain the administrative neglect that we assume caused the delay, we cannot determine the likelihood of repeated violations, and we lack any indication of potential administrative changes this violation should have prompted.

Up to this point in our analysis we have focused on the district court's role in permitting the speedy trial violation in this case. We have done so largely because the court fell on the sword by finding that it, and not the government, was to blame. While we do not disturb the court's finding, we cannot adequately address this final factor of the statutory analysis without shifting the spotlight back to the government.

Even though prosecutors do not "bear the burden of monitoring the court's compliance with the [Act] in absence of an announced rule, district courts do look to prosecutors for assistance as officers of the court." *Ramirez*, 973 F.2d at 39. As a nation, we demand a great deal from our United States District Courts and the judges who are called to serve on them. District courts in this Circuit and across the country shoulder heavy and complex caseloads—the Eastern District of New York more so than most.[5] Given the myriad of administrative demands

---

[5] The Administrative Office of the United States Courts publishes Federal Court Management Statistics on an annual basis. These statistics reveal that the United States District Court for the Eastern District of New York ("E.D.N.Y.") has one of the busiest dockets not only in this Circuit, but among all 94 district courts in the nation. The data covering the 12-month period ending on March 31, 2014 (which encompasses the majority of the period of delay in this case), reveals the following: The E.D.N.Y. was ranked second in this Circuit and eleventh nationally with respect to percent change in total filings over the previous year. ADMINISTRATIVE OFFICE OF THE UNITED STATES COURTS, FEDERAL COURT MANAGEMENT STATISTICS OF THE DISTRICT COURTS (March 2014). The E.D.N.Y. ranked second in this Circuit and twenty-second nationally with respect to total filings per active judgeship (and first in this Circuit and thirteenth nationally in civil filings). The amount of time and attention the court must devote to these filings varies greatly, however, and in terms of weighted filings per active judgeship, the E.D.N.Y. outpaced all other districts in this Circuit, and ranked eighth nationally. The 2014 statistics also reveal that the E.D.N.Y. had 838 pending cases per active judgeship, placing second in this Circuit and seventh nationally. Despite this workload, the E.D.N.Y. terminated 515 cases per active judgeship, placing it second in this Circuit and thirty-eighth nationally. The pace of judicial life in that district has not slowed down in the time since it ruled on Bert's motion to suppress, ADMINISTRATIVE OFFICE OF THE UNITED STATES COURTS,

that accompany these tasks, and in light of the government's "affirmative obligation to insure the speedy prosecution of criminal charges," *Vasquez*, 918 F.2d at 336, we agree—emphatically—that "it is wise for prosecutors to be alert to [Speedy Trial Act] calculations in order to aid the court in its enforcement" of that Act, *Ramirez*, 973 F.2d at 39. Once a motion has been taken under advisement the government may not simply wash its hands of any further involvement and be assured the benefit of dismissal without prejudice in the event that the Speedy Trial Act is violated due to the court's administrative neglect. Although the government is not required to monitor and notify the court of impending and expired speedy trial deadlines, any such action on the part of the government is properly taken into consideration when evaluating "the facts and circumstances of the case which led to the dismissal," 18 U.S.C. § 3162(a)(2), and may weigh in favor of dismissal without prejudice.

In this case, the government did not notify the court that the speedy trial deadline was approaching or had passed. It took no action whatsoever in this case during the year in which Bert's motion was under advisement. *Cf. Stayton*,

---

FEDERAL COURT MANAGEMENT STATISTICS OF THE DISTRICT COURTS (March 2015), and that court is presently operating with three of its fifteen seats vacant.

791 F.2d at 18 ("During this [sixteen month delay], the assistant United States attorneys on the case sent seven reminder letters to the court and went so far as to make a motion for a decision on this and several other pending pretrial motions.").

Given the extended administrative neglect by the court and the government in allowing the case to stagnate for almost a year while Bert was incarcerated, we conclude that the government's interest in administering justice by prosecuting Bert's firearms offenses is outweighed by the impact that permitting reprosecution would have on the administration of justice and of the Speedy Trial Act.

* * *

As determined above, the district court did not adequately consider several of the statutory factors relevant to its choice of remedy under the Act, to wit: the seriousness of the Speedy Trial Act violation as measured by length of the delay, the facts and circumstances that led to the need for dismissal, nontrial prejudice suffered by the defendant, and the impact of reprosecution on the administration of the Act and on the administration of justice. Its ruling was also premised on a mistaken interpretation of governing law. Accordingly, the determination to

31

order dismissal of Bert's indictment without prejudice constituted an abuse of discretion.

The district court's conclusion that all of the factors tipped in favor of dismissal without prejudice was also flawed. As the district court recognized, Bert was charged with a serious crime, there was no bad faith on the part of the court or the government, and no claim of trial prejudice. Regardless, the Speedy Trial Act violation was grave, unjustified by what we assume was mere administrative neglect, and presumptively prejudicial to the incarcerated defendant. Barring reprosecution in this case will have a more positive and substantial impact upon the administration of justice—and most certainly on improved administration of the Speedy Trial Act—than would permitting the prosecution to proceed. We conclude, therefore, that Bert's conviction should be reversed and the indictment against him dismissed with prejudice. Because of our disposition of this issue, it is unnecessary to address the other arguments Bert asserts in this appeal.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is reversed, and the case is remanded with instructions to vacate Bert's conviction and dismiss the indictment with prejudice.

DENNIS JACOBS, Circuit Judge, dissenting:

I respectfully dissent.

The majority opinion recites the applicable standards and rules; and if they were followed, I would sign the opinion of the Court. Then again, it would come out the other way.

The only issue presented is whether the district court had discretion to dismiss this case under the Speedy Trial Act (as it did) *without* prejudice. The delay was occasioned by a one-year interval in which the district court considered a suppression motion that was complicated, ramified, and virtually outcome-determinative.

As the majority opinion recites, the decision to dismiss with prejudice (or without) was confided by Congress to the discretion of the district court. This Court lacks power to substitute our own judgment (even if ours were superior). See Maj. Op. at 9-10. Since the seriousness of the crime is one salient consideration, it matters that the majority undoes police work that resulted in the conviction of a felon who had been using drugs, possessed a firearm with an obliterated serial number, was carrying it in the hallway of a residential building, and tossed the gun from the hallway window to land (and possibly go off) in a courtyard where residents had a right to be.

There are several first principles:

(1)     As between dismissal with prejudice and without, "neither remedy [is to be] given priority," United States v. Taylor, 487 U.S. 326, 335 (1988);

(2)     "[d]ismissal without prejudice is not a toothless sanction," id. at 342; and

(3)     "dismissal of a criminal indictment is a drastic remedy which should not be lightly considered," United States v. Fox, 788 F.2d 905, 909 (2d Cir. 1986).

In light of those principles and the district court's discretion, the relevant considerations militate so strongly against dismissal with prejudice that I can see no basis for revisiting the district court's ruling--let alone for reversal. In a nutshell, the majority opinion does a bad job of weighing the relevant factors (which it should not be doing in the first place), unfairly criticizes the United States Attorney's Office to create the spurious impression of institutional breakdown, and relies on circumstances that fail to distinguish this case from those that are dismissed *without* prejudice.

**I**

Two officers responded to a report made by the security guard of a residential building, and encountered on arrival two men in the lobby who admitted they did not live in the building, and who were directed to leave. The security guard told the officers that more trespassers were on the tenth and twelfth floors. In the tenth floor hallway, the officers saw Bert and two others, who claimed that they were visiting a friend in Apartment 10L. The resident of 10L disclaimed knowledge of the group (or did not answer) until Bert told her: "Tell them you know me," which she did. Disbelieving the response that Bert had prompted and observing Bert pacing back-and-forth with his body turned away from the officers, one of the officers drew his gun and asked to see Bert's hands. The other officer saw Bert adjust his sweatshirt, revealing a gun, and remove the gun from his waistband as he moved toward the open hallway window. He moved to handcuff Bert. When Bert began to struggle, a magazine released from the gun fell to the floor, and the gun hit the window and fell to the ground outside, where it was recovered by the police officers.

En route to the precinct, Bert (who was not <u>Mirandized</u>) began singing songs and asking after his gun. One of the officers in the police car asked Bert

what gun he was talking about; Bert did not respond and went back to singing. Later, Bert said he would reveal where other guns were if he were released.

After being given warnings at the precinct, Bert inquired as to whether the gun was still operable, observing that he could not be charged with possessing a loaded firearm because the magazine had been ejected, and that the firearm probably could not be found to be in working order because he had thrown it out a tenth-floor window. A bit later, Bert predicted that he would beat the case because the firearm was inoperable. Eventually, he was charged with being a felon in possession of a firearm and with possession of a firearm with an obliterated serial number.[1] 18 U.S.C. § 922(g)(1), (k).

On June 25, 2012, Bert filed his suppression motion. The district court's resolution of that motion caused the delay that violated the Speedy Trial Act. The motion, never simple, became increasingly complex as the government responded to the motion, Bert supplemented his arguments, six witnesses testified at the hearing, and post-hearing submissions proliferated. See infra

---

[1] Bert's prior felony convictions were for Tampering with a Witness in the Second Degree, Criminal Possession of a Controlled Substance in the Third Degree--Narcotic Drug with Intent to Sell, and Criminal Possession of a Weapon in the Third Degree. See Gov't Opp'n to Mot. to Dismiss on Speedy Trial at 1 n.1, United States v. Bert, No. 12-CR-100 (RJM) (E.D.N.Y. Mar. 17, 2014).

4

pages 12-14.

One year after the close of these proceedings, concerning a score of contentious issues, the district court denied the suppression motion in a 24-page opinion. The court ruled that the "police had the requisite level of suspicion of wrongdoing at all times, and that their actions were therefore reasonable under the circumstances," United States v. Bert, No. 12-CR-001 (RRM), 2014 WL 358983, at *6 (E.D.N.Y. Feb. 3, 2014); "there was no Fourth Amendment violation with respect to the encounter" in the hallway, id. at *9; none of Bert's statements were fruit of unconstitutional conduct, id.; Bert's statements en route to the precinct were voluntary and initiated by Bert, id.; and Bert understood his Miranda rights when he waived them, id. at *10. The district court made further and additional findings with respect to other contentions by Bert and responsive arguments advanced by the prosecution.

After the suppression motion was denied, Bert moved to dismiss with prejudice, citing his statutory and constitutional rights to a speedy trial. Def. Mot. to Dismiss on Speedy Trial, United States v. Bert, No. 12-CR-100 (RJM) (E.D.N.Y. Feb. 21, 2014). The statutory speedy trial clock began to run on March 4, 2013, 30 days after the last brief was filed on the suppression motion.

5

See 18 U.S.C. § 3161(h)(1)(D), (H).  Because Bert was not brought to trial within 70 days thereafter, the government conceded a statutory violation, see id. § 3161(c)(1), but argued there had been no constitutional violation and that dismissal under the Act should be without prejudice to reprosecution.

The district court found no constitutional violation and dismissed without prejudice.  After reindictment, a three-day jury trial resulted in a conviction on both counts, and Bert was sentenced principally to ten years' imprisonment.

## II

In deciding between dismissal with prejudice and without, the district court must consider statutory factors: seriousness of the offense; the facts and circumstances that led to dismissal; and the impact on the administration of the Act and on the administration of justice.  18 U.S.C. § 3162(a)(2).  The court must also consider the length of the delay, Taylor, 487 U.S. at 340; Maj. Op. at 12-13, and the prejudice to the defendant, United States v. Wilson, 11 F.3d 346, 352 (2d Cir. 1993).

These guides to discretion overlap considerably in this case.  The district court's opinion fully justifies its exercise of discretion in favor of dismissal

without prejudice.

## A

As to the seriousness of the offense, the majority concedes (as it must) that an offense involving a firearm with an obliterated serial number, carried in a residential hallway, is serious indeed. The majority opinion treats this issue in a perfunctory way as uncontested; but the district court's opinion explains its ruling in appropriate and compelling detail:

> It is a violent crime. The defendant possessed a loaded and defaced firearm. He's a felon in possession of a firearm . . . . The defendant is facing a ten-year and a five-year statutory maximum on each count. The government calculates his guidelines as a level 28. The defendant is in criminal history category number four, based on three prior arrests, including a prior arrest for possession of a weapon. The defendant faces a lengthy period of incarceration here and, in addition to this just being a straight possession case, as the evidence at the suppression hearing showed, the defendant didn't behave passively during the encounter that led to his arrest. He tried to secret the gun or get rid of the gun, through a window, and in doing so struggled with the arresting officer, putting himself, the officer and the bystanders in harm's way.

Special App. at 31-32.

**B**

As to the facts and circumstances of the speedy trial violation, the length of

the delay is important. The district court itself acknowledged that "[i]t was the

Court that caused the delay," and "concede[d]" that the delay was "lengthy."

Special App. at 29-30.

The majority opinion treats the twelve-month delay as decisive in itself.

But the cases on which the opinion relies (Maj. Op. at 14-15) offer no support, as

demonstrated in the margin.[2]

---

[2] To the contrary, three cases relied on by the majority emphasize the district court's discretion, and the role of the *district court* in weighing *all* the relevant factors in arriving at its determination (which the district court did here). See United States v. Wilson 11 F.3d 346, 352-53 (2d Cir. 1993); United States v. Wells, 893 F.2d 535, 538-40 (2d Cir. 1990); United States v. Kiszewski, 877 F.2d 210, 213 (2d Cir. 1989). In United States v. Simmons, 786 F.2d 479, 485-86 (2d Cir. 1986), this Court weighed the factors only because the district court had not had the occasion to conduct its own analysis, having found no violation of the Act. Moreover, in each of these cases, this Court found that dismissal *without* prejudice was appropriate, and/or deferred to the district court's determination. See, e.g., id. at 485 ("[W]e note that there is no presumption in favor of dismissal with prejudice in this circuit." (citing United States v. Caparella, 716 F.2d 976, 979 (2d Cir. 1983))).

While Wilson, Wells, and Simmons ruled that the brevity of delay weighed in favor of dismissal without prejudice, none of those cases can be construed to hold that some longer delay would end the inquiry and compel the opposite result. And in Kieszewski, we affirmed the district court's dismissal without prejudice despite a "not minor" delay, because of the salience of the other

8

"[I]n the absence of a factually supported finding of bad faith or a pattern of neglect by the local United States Attorney, an 'isolated unwitting violation' of the Speedy Trial Act cannot support a decision to dismiss with prejudice." United States v. Hernandez, 863 F.2d 239, 244 (2d Cir. 1988) (quoting Taylor, 487 U.S. at 339); see also United States v. Wells, 893 F.2d 535, 539 (2d Cir. 1990) (same). There is no issue of bad faith in this case. All that happened is that a trial judge in one of the busiest courts in the nation failed to make an easily justifiable finding that the delay needed to decide a complex and ramified suppression motion was in the interest of justice. Nor is there anything to suggest that the local United States Attorney's Office has engaged in a pattern of neglect or a "demonstrably lackadaisical attitude." United States v. Giambrone, 920 F.2d 176, 180 (2d Cir. 1990). The district court specifically found to the contrary--that the failure to seek exclusion of time pending decision of the suppression motion was "not . . . part of [a pattern of] gross neglect or . . . an attempt to circumvent the Speedy Trial Act to gain some benefit for the government or to flout the standards and requirements of the Speedy Trial Act." Special App at 30.

---

relevant factors, including the seriousness of the offense, the failure of the defendant to present evidence of prejudice, and the inadvertence of the violation. 877 F.2d at 214-15.

9

Although it was hardly necessary, the district court also disclaimed any attempt on its part to manipulate the clock. Id.

The majority opinion is not to the contrary. It adduces some out-of-Circuit cases that discussed only the period of delay, from which the majority draws a shaky inference that the length of delay is all that matters. See Maj. Op. at 20-21. But the majority does not discuss how the other factors cut, such as the absence of bad faith or a pattern of neglect. What we have here is the "isolated unwitting violation" referenced in Taylor. One swallow does not a summer make.


C

As to prejudice, Bert claims none; and the majority falls back upon the presumption that prejudice comes with delay. However, since prejudice is assumed in every case of delay, the presumption does not usefully distinguish between cases that should be dismissed with prejudice, or without. The majority concedes that the "district court was entitled to construe Bert's delay in noticing the violation as evidence that he did not suffer actual prejudice." Maj. Op. at 24. The absence of actual prejudice militates against a windfall for Bert by way of dismissal with prejudice.

10

## D

The interest of justice is surely disserved by the release onto the streets and hallways of Staten Island of a man who has now twice been convicted of firearms violations. So much for getting guns off the streets.

As to the interest in enforcement of the Speedy Trial Act, the majority's impulsive gift of dismissal with prejudice (in the absence of bad faith or abuse) can only subvert public respect for the Act.

I agree with the majority that the Act serves important ends and must be enforced, and that it is integral to the administration of justice. But the majority implicitly assumes that the Act is disserved or impaired unless dismissal is *with* prejudice; and that assumption violates the background principles that dismissal without prejudice is not toothless, that the Act embodies no preference as to whether dismissal should be with prejudice or without, and that the choice is confided to the discretion of the district court.

## III

Among other errors in the majority opinion, it casts the twelve-month delay as egregious by discounting the suppression motion as one "that does not

11

appear to present any novel legal questions or distinct factual complexity." Maj. Op. at 21-22. That observation is rebutted by the following (compressed) procedural account.

Bert moved to suppress the gun, the ammunition, and his post-arrest statements on the grounds that the officers lacked a basis for stopping him and that the weapon and statements were fruit of the poisonous tree. See Def. Mot. to Suppress at 5, United States v. Bert, No. 12-CR-100 (RJM) (E.D.N.Y. June 25, 2012). He also argued that his Miranda waiver was not knowing and voluntary because he had been high on angel dust. Id. at 7.

The government opposition argued that the police had the minimal level of objective justification required to establish reasonable suspicion to stop Bert, and that Bert "initialed . . . a written Miranda form [indicating] that he understood each of those rights" and "gave no indication that he did not understand those rights nor that he was so high that he could not understand those rights." Gov't Opp'n to Mot. to Suppress at 3, 9-10, United States v. Bert, No. 12-CR-100 (RJM) (E.D.N.Y. July 13, 2012). Furthermore, "[w]hen he was questioned following his Miranda waiver, he gave specific and detailed answers that were appropriate to the questions that were asked." Id. When the defendant was taken into federal

12

custody nearly two weeks after his arrest, he again waived his <u>Miranda</u> rights in writing.[3]  <u>Id.</u> at 4.

Bert reasserted his arguments on reply, Def. Reply Br., <u>United States v. Bert</u>, No. 12-CR-100 (RJM) (E.D.N.Y. July 23, 2012), and made a supplemental submission arguing (<u>inter alia</u>) that his "case was federalized in order to secure [his] cooperation with ongoing state investigations," so that his statements to federal agents were "the product of exploitation of the illegality of the initial stop."  Def. Suppl. Submission in Supp. of Mot. to Suppress at 3, <u>United States v. Bert</u>, No. 12-CR-100 (RJM) (E.D.N.Y. Aug. 16, 2012) (internal quotation marks and alterations omitted).

At the suppression hearing held November 20, 2012, the government adduced testimony from three police officers (including the arresting officers), a detective, and a special agent.  The defense called an investigator with the Federal Defenders' Office.  The parties filed numerous post-hearing submissions.  <u>See</u> Def. Post-Hr'g Mem., <u>United States v. Bert</u>, No. 12-CR-100 (RJM) (E.D.N.Y.

---

[3] A further argument by the government was that Bert failed to show the requisite possessory interest in the firearm and ammunition.  Gov't Opp'n to Mot. to Suppress at 5, <u>United States v. Bert</u>, No. 12-CR-100 (RJM) (E.D.N.Y. July 13, 2012).

Dec. 13, 2012); Gov't Post-Hr'g Mem., <u>United States v. Bert</u>, No. 12-CR-100 (RJM) (E.D.N.Y. Dec. 13, 2012); Def. Post-Hr'g Mem. Reply, <u>United States v. Bert</u>, No. 12-CR-100 (RJM)  (E.D.N.Y. Dec. 19, 2012); Def. Suppl. Post-Hr'g Mem., <u>United States v. Bert</u>, No. 12-CR-100 (RJM) (E.D.N.Y. Jan. 25, 2013); Gov't Post-Hr'g Mem. Reply, <u>United States v. Bert</u>, No. 12-CR-100 (RJM) (E.D.N.Y. Feb. 1, 2013).

By my count, the district court's opinion on the suppression motion decides a dozen issues of fact and law, and applications of law to fact--issues arising out of several ambiguous encounters: one in the hallway, one in the squad car, one at the precinct, another in the squad car, and one in the Pretrial Services office of the federal courthouse.  <u>See generally</u> <u>United States v. Bert</u>, 2014 WL 358983, at *2-6.  The district court's 24-page opinion resolves the myriad issues in a taut and businesslike way.  The delay in deciding that motion violates the Speedy Trial Act, but cannot be said to embarrass the district court.

\*     \*     \*

In short, the delay was an isolated instance; there was no bad faith or pattern of delay or misconduct by the prosecutors, or by the judge, or by the court as a whole; and, under the circumstances, no incentive for abuse can be identified, let alone be said to arise, such that the administration of justice and the

14

Act requires dismissal with prejudice when the district court has found

otherwise.